Cite as 2015 Ark. 189

# SUPREME COURT OF ARKANSAS

No. CV–15–227

| | |
|---|---|
| NATHANIEL SMITH, M.D., ET AL., **APPELLANTS** | **Opinion Delivered** May 7, 2015 |
| V. | RESPONSES TO *SMITH V. WRIGHT*, 2015 Ark. 38 (per curiam) |
| M. KENDALL WRIGHT AND JULIA E. WRIGHT, INDIVIDUALLY AND ON BEHALF OF THEIR MINOR CHILDREN, G.D.W. AND P.L.W., ET AL. **APPELLEES** | QUESTION ANSWERED; MOTION TO WITHDRAW RESPONSE MOOT; AMENDED MOTION TO WITHDRAW RESPONSE GRANTED; MOTION TO DISMISS DENIED. |

**KAREN R. BAKER, Associate Justice**

The Arkansas Constitution provides that "[t]he Supreme Court *shall* be composed of seven Justices." However, in *Smith v. Wright*, Case No. CV-14-427, in violation of our constitution, there are eight justices poised to decide that appeal. Consequently, the question presented in this case is: In accordance with the Arkansas Constitution and our law, which justices properly constitute the Arkansas Supreme Court to decide the case of *Smith v. Wright*, Case No. CV-14-427? Specifically, the question is whether Justice Rhonda K. Wood or Special Justice Robert W. McCorkindale is one of the seven justices required by the Arkansas Constitution, amendment 80, to constitute the Arkansas Supreme Court in Case No. CV-14-427? The question before us is neither trifling nor insignificant. Instead, it is a question of major constitutional significance; therefore, it became necessary to take the issue as a case so that it may be properly decided. After a careful examination of our constitution,

SLIP OPINION

our statutes, and our case law, we conclude that the answer to this question is clearly and unambiguously that Justice Rhonda K. Wood, having been duly elected by the people of this state and having begun her eight-year term as a justice on the Arkansas Supreme Court on January 1, 2015, is the qualified justice invested with the judicial power to participate in Case No. CV–14–427 and that Special Justice Robert W. McCorkindale's constitutional authority to participate in Case No. CV–14–427 expired December 31, 2014.

*Factual and Procedural Background*

The history of the matter before us begins with the companion case of *Smith v. Wright*, Case No. CV–14–427, wherein the appellant, Smith (hereinafter "the State") appealed the Pulaski County Circuit Court's order in favor of the appellee, Wright, declaring amendment 83 of the Arkansas Constitution and related statutes unconstitutional.[1] Several county clerks are also appellants in this case. Here, appellants, White, Lonoke, Conway, Saline, Faulkner, and Washington County Clerks (hereinafter "White County"), filed responses regarding the instant case, which will be considered accordingly. The merits of *Smith v. Wright*, Case No. CV–14–427 are not at issue in the matter before us in this opinion.[2]

On May 15, 2014, an appeal was lodged in *Smith v. Wright*, Case No. CV–14–427.

---

[1]Although a portion of the "Factual and Procedural Background" predates the appointments of Special Justices Dickey and Womack to serve on this case and is outside their personal knowledge, they agree that this section of the opinion is necessary to establish the court's jurisdiction in this matter.

[2]In an effort to be abundantly clear to the reader, this opinion has no bearing on the merits of Case No. CV–14–427, and this court will not render any opinion on that case in this opinion.

Cite as 2015 Ark. 189

On September 10, 2014, Justice Cliff Hoofman recused from the matter. On October 2, 2014, then Governor Mike Beebe appointed Robert W. McCorkindale to serve as special justice in place of Justice Hoofman. On October 13, 2014, we granted Wright's request for oral argument. On October 23, 2014, a majority of this court, with Special Justice McCorkindale joining the majority, granted Wright's motion to expedite the appeal, with Justice Hart dissenting and Justice Hoofman not participating. On October 23, 2014, oral argument was scheduled by the Supreme Court Clerk at the direction of Chief Justice Jim Hannah, to be held on November 20, 2014. Thereafter, the parties timely filed their briefs. Additionally, eight amicus briefs were filed. Further, prior to the November 20, 2014 oral argument, pursuant to Rule 5-1(j) of the Arkansas Supreme Court Rules, the parties filed multiple notices of additional authority that they intended to rely on during oral argument for a combined total of approximately fifteen additional cases.

On November 20, 2014, the court held oral argument. In accordance with the supreme court's previously adopted and published calendar, the 2014 term concluded on December 18, 2014 without an opinion in *Smith v. Wright*, Case No. CV-14-427 having been issued. On December 31, 2014, Justice Donald Corbin and Justice Cliff Hoofman completed their terms on the Arkansas Supreme Court. Prior to the end of their terms, Chief Justice Hannah, approved a statement for release to the press by Stephanie Harris, Supreme Court Communications Counsel, that it was this court's custom and practice that a special justice who is appointed to replace a justice who had recused and whose term had ended, would continue to participate in the case. We note that although this statement was released to the press, after a diligent and exhaustive search of this court's case law and docket, we have been

3

unable to find a single case in which a special justice continued to serve on a case when an opinion had not been delivered by the end of the term of the disqualified justice who had been replaced by a newly elected, qualified justice.[3] Accordingly, this court does not have a settled custom or practice to apply in this situation.

On January 1, 2015, Justices Rhonda K. Wood and Robin F. Wynne, having been duly elected to the Arkansas Supreme Court, began their eight-year terms on the court. Justice Wood replaced Justice Hoofman, and Justice Wynne replaced Justice Corbin. The 2015 Supreme Court first convened on January 6, 2015, for the investiture of Justice Wood, Justice Wynne, and Justice Karen R. Baker, whose previous term had expired but who had been elected to a subsequent eight-year term. The first conference of the newly constituted court was held on January 7, 2015. At that time, there were a total of four cases, which had been previously submitted to the court in 2014 but were removed from submission when the

---

[3]In *Unborn Child Amendment Comm. v. Ward*, a special justice remained on the case after a two-and-one-half year delay that resulted when this court, after oral argument, stayed the appeal pending resolution on appeal of a federal court's order ruling that the constitutional amendment under consideration in *Ward* was unconstitutional. *See Unborn Child Amendment Comm. v. Ward*, 328 Ark. 454, 942 S.W.2d 591 (1997); *Unborn Child Amendment Comm. v. Ward*, 318 Ark. 165, 883 S.W.2d 817 (1994). In that case, the justice who had recused was still on the court when the case was submitted following the stay. Also, in *Lake View School District No. 25 of Phillips County v. Huckabee*, Case No. 01-836, a special justice continued to serve after the justice who had disqualified was re-elected to a subsequent eight-year term; but in that case the elected justice remained disqualified from serving. Such is not the case here in Case No. CV-14-427. Finally, we note that in isolated incidents, special justices have participated in the consideration of a petition for rehearing, after the disqualified justice was replaced by a newly elected justice. However, in those limited cases, after an opinion was delivered, the elected official assented to the special justice's continuing service through the petition for rehearing, and no constitutional challenge was presented. *See, e.g.*, *Kimbrell v. McCleskey*, Case No. 11-1289. However, despite the timing of the appeal or the elected justice's agreement to the special justice's continued service, based on our decision here, that practice shall no longer continue because it violates our constitution.

term ended without a mandate having been issued in those cases. In two of those cases, a special justice had been appointed due to the disqualification of Justice Hoofman.

At the January 7, 2015 conference, Justice Wood expressed her belief that it was her constitutional duty to participate in any matter before the court, unless she had a reason to recuse. Arkansas Code of Judicial Conduct, Rule 2.7, "Responsibility to Decide," provides: "A judge shall hear and decide matters assigned to the judge, except when disqualification is required by Rule 2.11 or other law." The comment to the rule provides:

> Judges must be available to decide the matters that come before the court. Although there are times when disqualification is necessary to protect the rights of litigants and preserve public confidence in the independence, integrity, and impartiality of the judiciary, judges must be available to decide matters that come before the courts. Unwarranted disqualification may bring public disfavor to the court and to the judge personally. The dignity of the court, the judge's respect for fulfillment of judicial duties, and a proper concern for the burdens that may be imposed upon the judge's colleagues require that a judge not use disqualification to avoid cases that present difficult, controversial, or unpopular issues.

*See also* Rule 2.11, "Disqualification."

Justice Wood did not recuse from either of the cases in which a special justice had been previously appointed due to Justice Hoofman's recusal. *See infra* n.8. Special Justice McCorkindale participated by phone and maintained that his appointment as a special justice in Case No. CV-14-427 continued. *Id.* After researching the issue, the court unanimously resolved to notify the parties in Case No. CV-14-427 by letter from Chief Justice Hannah on behalf of the court that Justice Wood and Special Justice McCorkindale both asserted that they should participate in the case when it is submitted to the court. *Id.* Despite this initial unanimous agreement, no letter was sent, and the matter languished until January 23, 2015. *Id.*

Cite as 2015 Ark. 189

On January 23, 2015, the State filed a motion for a second oral argument. In the motion, the State requested that the court schedule a second oral argument and asserted that three justices had not been able to attend the first oral argument on November 20, 2014.[4] The State further contended that "Former Justice Cliff Hoofman recused from this case and was replaced by Special Justice Robert W. McCorkindale. . . . Justice Hoofman's term has ended, and . . . Justice Rhonda K. Wood replaced Justice Hoofman on the Court. Justice Wood was not present at the oral argument on November 20, 2014." On January 27, 2015, Wright filed her response to the motion for a second oral argument and urged this court to deny the motion as unnecessary. Wright asserted that "Special Justice McCorkindale was specifically appointed by the Governor as a Special Justice to hear 'this specific case.' . . . Special Justice McCorkindale was present and participated in the oral argument held on November 20, 2014. Special Justice McCorkindale was appointed specifically to preside over this case."

On February 5, 2015, because the parties had taken competing positions regarding the justices who would serve on Case No. CV–14–427, citing to *Hill v. State*, 362 Ark. 659, 210 S.W.3d 123 (2005), a per curiam was issued ordering the parties to provide any authority to support their respective positions regarding the justices who should preside over the appeal. *Smith*, 2015 Ark. 38. Additionally, we note that *Smith*, 2015 Ark. 38, was issued unanimously

---

[4]Chief Justice Hannah did not attend the oral argument because he was attending an out-of-state court conference, but counsel was informed that he would participate and would have access to the oral-argument video. Justices Wynne and Wood were not on the court at that time.

by this court, including Chief Justice Hannah and Justice Paul Danielson, who have both now recused from this matter.[5] On March 18, 2015, after the parties had filed timely responses to the per curiam, with neither Justice Wood nor Special Justice McCorkindale participating, the court unanimously decided to take up the matter as a separate case. Despite this unanimous decision, no per curiam order was issued by the clerk at that time.[6] *See infra* n.8. Thereafter, on April 2, 2015, the court decided to take the responses to *Smith*, 2015 Ark. 38 as a separate case with only Justice Danielson dissenting and neither Special Justice McCorkindale nor Justice Wood participating. *Id.* The order stated in pertinent part:

> THE ARKANSAS SUPREME COURT ISSUED THE FOLLOWING ORDER TODAY IN THE ABOVE STYLED CASE:
>
> RESPONSES TO THE COURT'S PER CURIAM ORDER OF FEBRUARY 5, 2015, ARE TAKEN AS A NEW CASE. SIMULTANEOUS BRIEFING DUE IN TEN DAYS. DANIELSON, J., DISSENTS. NEW CASE NO. IS CV-15-227.
>
> One week later, on April 8, 2015, Chief Justice Hannah and Justice Danielson

---

[5]We note that Justice Danielson stated in his recusal letter:

I believe that a majority of this court has manufactured a case where no case or controversy exists. There has been no motion by any party challenging the qualification of Justice Robert McCorkindale to continue to decide the appeal in *Smith v. Wright*, No. CV-14-427.

However, the record clearly demonstrates that the parties took competing positions on which justices were to serve on this case and the court, including Justice Danielson, *unanimously* ordered formal responses to the issue presented.

[6]We note that a record of the court's decision on March 18, 2015, is contained in the case record pursuant to Administrative Order No. 19 and maintained by the office of the Supreme Court Clerk.

simultaneously recused from this case.[7]  Chief Justice Hannah's recusal letter stated in its

entirety:

> After careful consideration and with much regret, I must recuse from *Smith v. Wright*, No. CV-15-227.  I believe that a majority of this court has created out of whole cloth an issue to delay the disposition in *Smith v. Wright*, No. CV-14-427.
>
> Following Justice Cliff Hoofman's disqualification in *Smith v. Wright*, No. CV-14-427, Governor Mike Beebe appointed the Honorable Robert W. McCorkindale "as Special Associate Justice of the Arkansas Supreme Court to participate in this specific case." The governor's appointment power conferred by the Arkansas Constitution is a matter protected from judicial interference by the separation-of-powers doctrine. This court cannot by judicial fiat usurp the power of the executive branch.
>
> When I took the oath of the office, I swore to uphold the Constitutions of the United States and the State of Arkansas.  Further, I am obligated to follow the Arkansas Code of Judicial Conduct. Canon 1 mandates that a judge shall uphold and promote the independence, integrity, and impartiality of the judiciary. The oath of office and my duties pursuant to the Code of Judicial Conduct require that I recuse in *Smith v. Wright*, No. CV-15-227. To be clear, I do not recuse from the appeal in *Smith v. Wright*, No. CV -14-427.[8]

---

[7]The docket reflects that recusal letters were filed at 3:03 p.m. and 3:04 p.m.

[8]The procedural background provided in this case is in part a response to Chief Justice Hannah's and Justice Danielson's April 8, 2015 recusal letters accusing the majority of this court of delaying disposition in Case No. CV-14-427.  Pursuant to Rule 2.10 (E) of the Code of Judicial Conduct, a judge is permitted to respond to allegations regarding his or her conduct in a matter. Rule 2.10 of the Code of Judicial Conduct, "Judicial Statements on Pending and Impending Cases," provides in pertinent part:

> (A) A judge shall not make any public statement that might reasonably be expected to affect the outcome or impair the fairness of a matter pending or impending in any court, or make any nonpublic statement that might substantially interfere with a fair trial or hearing.
>
> . . . .

Although Chief Justice Hannah recused and asserted that "a majority of this court has created out of whole cloth an issue to delay the disposition in *Smith v. Wright*, No. CV-14-427," the docket unambiguously reflects that Chief Justice Hannah joined in the decision to take the matter as a case on April 2, 2015, and then recused one week after joining that decision. Moreover, it is patently clear that the appeal in Case No. CV-14-427 cannot move forward without first deciding which justices will hear the appeal, and no other action is possible until the issue is settled. Therefore, the purpose of the present action is to resolve this issue so that the underlying case can be determined and not for the purpose of delay. *See supra* n.8.

On April 8, 2015, Wright filed a motion to withdraw her response to our February 5, 2015 per curiam, and on April 13, 2015, she filed an amended motion to withdraw her response to our per curiam. In the amended motion, she requested that this court find the issue moot and dismiss this case.[9] On April 13, 2015, the State and White County timely filed their respective briefs, and the issue is now properly before this court.

*Law and Analysis*

---

(E) *Subject to the requirements of paragraph (A), a judge may respond directly or through a third party to allegations in the media or elsewhere concerning the judge's conduct in a matter.*

(Emphasis added.) *See Recusals Letters* from Chief Justice Hannah and Justice Danielson, *supra*, at 7 n.5 & 8.

[9]However, despite Wright's position, any action by a special justice once his or her power has terminated would be void. *See Hyllis v. State*, 45 Ark. 478 (1885) ("[C]onsent, either expressly or tacitly given, cannot impart judicial power.").

SLIP OPINION

We now consider the merits of this case. The narrow issue presented is to determine which justices will serve on *Smith v. Wright*, Case No. CV–14–427.

First, we turn to Amendment 80 to the Arkansas Constitution, which governs the judicial branch and provides in pertinent part:

§ 1. Judicial Power

The judicial power is vested in the Judicial Department of state government, consisting of a Supreme Court and other courts established by this Constitution.

§ 2. Supreme Court

(A) The Supreme Court *shall* be composed of seven Justices, one of whom shall serve as Chief Justice. The Justices of the Supreme Court shall be selected from the State at large.

. . . .

§ 12. Temporary Disqualification of Justices or Judges

No Justice or Judge shall preside or participate in any case in which he or she might be interested in the outcome, in which any party is related to him or her by consanguinity or affinity within such degree as prescribed by law, or in which he or she may have been counsel or have presided in any inferior court.

§ 13. Assignment of Special and Retired Judges

(A) If a Supreme Court Justice is disqualified or temporarily unable to serve, the Chief Justice shall certify the fact to the Governor, who within thirty (30) days thereafter shall commission a Special Justice, unless the time is extended by the Chief Justice upon a showing by the Governor that, in spite of the exercise of diligence, additional time is needed.

. . . .

§ 16. Qualifications and Terms of Justices and Judges

(A) Justices of the Supreme Court and Judges of the Court of Appeals shall have been

10

licensed attorneys of this state for at least eight years immediately preceding the date of assuming office. They *shall* serve eight–year terms.

(Emphasis added.)

Also relevant to this case is Ark. Code Ann. § 21-1-102(a)(1) (Repl. 2004) "Terms; certain officers" which provides, "The terms of office of the Justices of the Supreme Court . . . shall begin on January 1 following their election."[10]

With these constitutional and statutory provisions in mind, we turn to the issue before us and recount the parties' positions. Relying on amendment 80, §§ 1, 2, 13, 16, and 19, the State asserts that the case should be decided by the seven justices who are currently serving terms on the court, because only the justices currently serving terms on the court possess the constitutional authority to decide cases in 2015. The State contends that pursuant to amendment 80, the appointment of a special justice is "temporary" and the special justice serves for only so long as that sitting justice is disqualified. Here, the State asserts that the disqualification, Justice Hoofman's recusal, ended when Justice Hoofman was replaced by a newly elected justice. In sum, the State contends that pursuant to amendment 80, there is no longer a disqualification, and that it is Justice Wood, not Special Justice McCorkindale, who should participate in the court's disposition of *Smith v. Wright*, Case No. CV-14-427.

The State further contends that it has not identified a rule or statute that governs this

_____

[10]We also note that pursuant to Ark. Code Ann. § 16-11-101 (Repl. 2010) "The Supreme Court of Arkansas shall begin its annual term on the second Monday of September in each year and may recess and adjourn from time to time as the court orders."

matter. Although Rule 1-7 of the Arkansas Supreme Court Rules calls for this court to render decisions in accordance with "existing practice," the State is unaware of any existing practice regarding the issue presented. Finally, citing to *Cates v. Wunderlich*, 210 Ark. 724, 197 S.W.2d 482 (1946), the State contends that the date of the opinion controls, and the justices who participate in the opinion must be sitting justices of the court on the date the opinion is rendered.

White County likewise contends that amendment 80 controls and asserts that §§ 13 and 16 answer the issue presented. White County contends that, pursuant to amendment 80, § 13, the constitution's preference is for cases to be decided by the elected justice and allows for assignment of a special justice for the recusing justice but that the appointment does not continue when there is a sitting justice who has not been disqualified. Stated differently, White County contends that Special Justice McCorkindale's appointment expired when Justice Hoofman's term ended, and that Justice Wood, as the sitting elected justice, should serve on the case. Further, White County contends that amendment 80, § 16 is a "mandatory constitutional provision that effectuates the will of the People of Arkansas by allowing Justices they elect to serve definite terms," and must be followed.

Finally, in her amended motion to withdraw her response, Wright does "not wish to take a position upon which Justices should decide this case. . . . [Wright] specifically waives any objection to whatever determination this Court might make itself as to the appropriate justices to decide the matter."

Turning to our review of the law, when interpreting a statute, "we construe it just as

it reads, giving the words their ordinary and usually accepted meaning in common language. We construe the statute so that no word is left void, superfluous, or insignificant, and we give meaning and effect to every word in the statute, if possible." *DaimlerChrysler Corp. v. Smelser*, 375 Ark. 216, 222, 289 S.W.3d 466, 472 (2008). When interpreting the constitution, "our task is to read the laws as they are written, and interpret them in accordance with established principles of constitutional construction. . . . Language of a constitutional provision that is plain and unambiguous must be given its obvious and common meaning." *Smith v. Sidney Moncrief Pontiac, Buick, GMC Co.*, 353 Ark. 701, 720, 120 S.W.3d 525, 537 (2003) (internal citations omitted). Additionally, we have interpreted the word "shall," to mean mandatory and require mandatory compliance. *See, e.g.*, *Campbell v. State*, 311 Ark. 641, 846 S.W.2d 639 (1993); *Loyd v. Knight*, 288 Ark. 474, 706 S.W.2d 393 (1986).

With these standards in mind, we review the applicable laws. First, Ark. Code Ann. § 21-1-102(a)(1) provides in plain and unambiguous language that the terms of office of the Justices of the Supreme Court shall begin on January 1 following their election. Accordingly, here, January 1, 2015. Second, the plain language of amendment 80, § 16, provides that Justices of the Supreme Court shall serve eight-year terms. Here, January 1, 2015 – December 31, 2022. Third, amendment 80, § 13(A), in plain and unambiguous language provides that if a Supreme Court Justice is disqualified or temporarily unable to serve the Chief Justice shall certify the fact to the Governor for commission of a Special Justice. However, because Justice Wood is not disqualified or temporarily unable to serve, this provision is inapplicable to the facts before us.

13

SLIP OPINION

Here, based on the plain and unambiguous language of the statute at issue and the constitutional provisions, the mandatory terms of Ark. Code Ann. § 21-1-102(a)(1) and the constitution unequivocally dictate that the justices currently sitting on the court shall serve on *Wright v. Smith*, Case No. CV-14-427. Although Wright withdrew her response, she had previously taken the position that Special Justice McCorkindale should remain on the case. However, such a position would stand in violation of the Arkansas Constitution. Our constitution provides for the elected justices of this court to determine pending appeals. Special justices are temporary and their appointments cannot be used to thwart the clear language and intent of our constitution.

Further, in support of our interpretation is this court's holding in *Caldwell's Adm'r v. Bell & Graham*, 6 Ark. 227 (1845). In *Caldwell*, the issue presented was the same as in the current case: whether a special judge, commissioned by the governor, retains constitutional authority when the reason for the appointment expires. In *Caldwell*, we held that the special judge's commission expired and explained,

> The . . . 6th article of the Constitution provides for the appointment of special judges for the trial of such causes as the regular judges are disqualified from trying by reason of any of the disabilities therein enumerated. That provision is designed to prevent a failure or delay of justice for want of officers, competent and qualified, to sit for the trial and determination of such causes, without partiality or prejudice.

*Caldwell*, 6 Ark. at 233.

This court in *Caldwell* then questioned, given the purpose of the provision in the constitution, whether such appointments should continue until the final determination of the causes, even if the need for a special judge had ceased. The court specifically posed and

14

answered the same question presented in this case:

> Was it intended that a special judge should finally dispose of the causes which he might be appointed to try, although the regular judge who was incompetent to sit in the cases should go out of office, and a successor be appointed, and who should in every respect be qualified to try the causes which the special judge might be appointed to try? The obvious reasons for making the provision for such special appointment induce us to answer in the negative.

*Id.* at 234.

> The *Caldwell* court went on to explain its reasoning as follows:

> [T]he provision for the appointment of special judges, only in cases where the regular judges should be disqualified for trial thereof under the Constitution, clearly prove that all matters in controversy were intended to be determined by the regular judges when no disability or disqualification rested upon them; and that, therefore, the conclusion legitimately follows, that *where the disability upon the part of the regular judge should be removed by a change of the incumbent upon the bench, or otherwise, the reasons for the special appointment having ceased, it was intended that the appointment itself should cease.* The special judge is only appointed to perform duties which the regular judge is the proper officer to perform, but who, for good and sufficient reasons, is deemed by the Constitution an improper person to perform them. *We are, therefore, clearly of opinion, that the commission of the special judge expires with the reasons which caused it to be issued, whether by the resignation, expiration of the term of service of the judge in whose place he was appointed to act, or otherwise. The commission of the special judge is but the incident to that of the regular officer and must follow and expire with its principal*[.]
> . . . .

> It never was intended that there should be two judges, in every respect competent and qualified, under the constitution, to preside in the same court, for the trial and determination of the same cause at the same time.

*Id.* at 234–35 (emphasis added).

   *Caldwell* supports our interpretation of amendment 80.[11]   Further,   decisions

---

[11]Our opinion in *Caldwell* is consistent with case law from other jurisdictions.  *See also Coles v. Thompson*, 27 S.W. 46 (Tx. Ct. App. 1894) (holding that the powers of the special judge terminate when the disqualified judge had been regularly succeeded in office by

interpreting a provision of an earlier constitution must be deemed to have been adopted when the same provision is incorporated into a later constitution. *Mo. Pac. Transp. Co. v. George*, 198 Ark. 1110, 133 S.W.2d 37 (1939). Amendment 80 and the language of the 1836 Constitution are in substance the same; therefore, *Caldwell* is directly on point.[12]

---

another judge because the occasion for the special judge's existence had ceased); *see also State ex rel. Johnson v. Judges of Circuit Court of Appeals for Fourth Circuit*, 21 So. 520 (La. 1897)(holding that under a provision of the Constitution, a member of the bar had been selected to sit in a cause in which the judges of the Court of Appeals were disqualified cannot act after one of the disqualified judges has retired, and his successor has entered on the duties of the office.)

[12]The 1836 Constitution provided:

No judge shall preside on the trial of any cause in the event of which he may be interested, or where either of the parties shall be connected with him by affinity or consanguinity within such degrees as may be prescribed by law, or in which he may have been of counsel or have presided in an inferior court, except by consent of all the parties. In case all or any of the judges of the Supreme Court shall be thus disqualified from presiding on any cause or causes, the court or judges thereof shall certify the same to the Governor of the State, and he shall immediately commission specially the requisite number of men of law knowledge for the trial and determination thereof. The same course shall be pursued in the Circuit and other inferior courts as prescribed in this section for cases in the Supreme Court. Ark. Const. of 1836, art. VI, § 12.

Amendment 80, §§ 12-13 provides:

No Justice or Judge shall preside or participate in any case in which he or she might be interested in the outcome, in which any party is related to him or her by consanguinity or affinity within such degree as prescribed by law, or in which he or she may have been counsel or have presided in any inferior court. Ark. Const. amend. 80, § 12.

If a Supreme Court Justice is disqualified or temporarily unable to serve, the Chief Justice shall certify the fact to the Governor, who within thirty (30) days thereafter shall commission a Special Justice, unless the time is extended by the Chief Justice

Finally, Rule 1-7, "Practice Absent a Specific Rule," of the Rules of the Arkansas Supreme Court, provides in its entirety: "In cases where no provision is made by statute or other rule, proceedings in the Court shall be in accordance with existing practice." As previously stated, no such custom or procedure exists. And even if it did exist, any such practice must comport with our law and our constitution.

We also take this opportunity to address the court's per curiam opinion in *Neal v. Wilson*, 321 Ark. 70, 900 S.W.2d 177 (1995). Although not on point, because the decision was based on waiver and no constitutional question was raised or discussed, we address *Neal* because it contains a clear misstatement of the law. In *Neal*, in a Phillips County disbarment proceeding, James A. Neal, Executive Director of the Supreme Court Committee on Professional Conduct, brought suit against Wilson. At the outset of the proceedings, the two circuit court judges in the district both recused from the proceeding. Pursuant to Act 496 of 1965, on February 18, 1992, the Chief Justice assigned Circuit Judge Lance Hanshaw to the matter.[13] On March 3, 1993, Judge Hanshaw entered an order dismissing the action and

upon a showing by the Governor that, in spite of the exercise of diligence, additional time is needed. Ark. Const. amend. 80, § 13(A).

[13]Act 496 of 1965 § 1 provided in pertinent part: "The Chief Justice of the Arkansas Supreme Court of Arkansas . . . may assign, reassign and modify assignments of judges of the circuit court . . . upon a temporary basis."

Act 496 is now codified at Ark. Code Ann. § 16-10-101(b)(1) and was in effect when *Neal* was decided:

(b)(1) Under rules prescribed by the Supreme Court, the Chief Justice may require reports from all courts of the state and may issue such orders and regulations as may

on April 18, 1994, we reversed. On remand, on April 20, 1994, Hanshaw requested another judge to be assigned to hear the case. On May 3, 1994, the Chief Justice appointed Circuit Judge John Lineberger to the matter and notified the parties, the circuit judges in that district, and the Phillips County Circuit Clerk of the appointment. However, the order was not filed until September 14, 1994. In December 1994, Wilson moved for Lineberger's disqualification, asserting that a new circuit judge had taken office who had not recused in the case and that the proceeding automatically reverted to the new circuit judge. On January 5, 1995, Judge Lineberger denied Wilson's motion and ultimately set a trial date for June 13, 1995.

In May 1995, Wilson notified Mr. Neal that the new 1st Judicial Circuit Judge, Judge

---

be necessary for the efficient operation of those courts to ensure the prompt and proper administration of justice and may assign, reassign, and modify assignments of circuit and district judges of the circuit court, the chancery court, and the probate court to hold, upon a temporary basis, regular or special sessions for the transaction of civil or criminal business within any other such court.

*See* Act 760 § 1, 1989.

In 2003, Ark. Code Ann. § 16-10-101(b)(1) was modified by Act 1185 to remove chancery and probate courts from the subsection and a portion of the subsection was struck as follows:

(b)(1) Under rules prescribed by the Supreme Court, the Chief Justice may require reports from all courts of the state and may issue such orders and regulations as may be necessary for the efficient operation of those courts to ensure the prompt and proper administration of justice and may assign, reassign, and modify assignments of circuit and district judges ~~of the circuit court, the chancery court, and the probate court~~ to hold, upon a temporary basis, regular or special sessions for the transaction of civil or criminal business within any other such court.

Olly Neal, had two dates to try Mr. Neal's case. Judge Neal set a hearing; Mr. Neal appeared and challenged Judge Neal's jurisdiction, asserting that Judge Lineberger retained jurisdiction. Judge Neal ruled that he had jurisdiction and decided the case on the merits.

Mr. Neal filed a petition for writ of certiorari with this court alleging that all orders by Judge Olly Neal were void because Judge Lineberger, the appointed judge, maintained jurisdiction. This court agreed with Mr. Neal and granted the writ of certiorari. In a per curiam opinion, with two justices dissenting, the court explained its holding:

> Why respondent failed to question Judge Lineberger's assignment earlier is unclear. Regardless, we emphasize the fact that the record before this court at the time of Judge Lineberger's assignment reflects that the circuit judges in the 1st Judicial District had recused from this case, and no party had offered any motion, objection or information to the contrary. *It is the parties' or trial court's responsibility to apprise this court as to whether an assignment is necessary under Act 496. Once that assignment is made, that responsibility continues. Clearly, it is not this court's task, on its own volition, to discover or monitor whether the circumstances have changed to warrant the termination of an assignment or reassignment.* The mere fact that a new circuit judge had been elected in the 1st Judicial Circuit after Judge Hanshaw's and before Judge Lineberger's assignments did not, in itself, suggest the new circuit judge had not recused from trying this case.

*Neal*, 321 Ark. at 74–75, 900 S.W.2d at 179–80 (1995) (emphasis in original).

Without citation to any authority, the court granted the writ. The *Neal* opinion stands in violation of the constitution and our interpretation of amendment 80. Elected judges and justices serve unless they are disqualified. *See* amendment 80, § 13(A)–(C). *Neal* seems to indicate that had the court been advised that a new judge had been elected, who had not recused, the assignment of a special judge would have terminated, or the assignment of a different special judge would not have been made. While this supports our conclusion that a special judge's appointment ends when the reason for the disqualification is removed

by the expiration of the term of the recusing judge, we cannot agree that disqualification of the elected judge is presumed. Rather, a duly elected judge serves unless that judge recuses or is disqualified. Thus, to the extent *Neal* holds otherwise, we overrule it.[14]

Finally, here, the governor exercised his authority to appoint Special Justice McCorkindale to replace Justice Hoofman, who had recused. Yet, at the end of his term, Justice Hoofman was replaced by an elected justice, and Special Justice McCorkindale's appointment expired. There is no separation-of-powers issue. We also note that despite Chief Justice Hannah's assertion in his recusal letter that addressing the issue in this case is an attempt to "by judicial fiat usurp the power of the executive branch," the parties themselves

---

[14]Although the concurring opinion would not overrule *Neal*, because "*Neal* had nothing to do with special justices under Amendment 80 or its predecessor or the length of special justices' terms," that position is fatally flawed. Regardless of whether the *Neal* opinion predates the passage of amendment 80 in 2000 or the reliance on Ark. Code Ann. § 16-10-101(b)(1), *Neal* is inconsistent with the constitution that was in effect at the time of that decision in 1995 and is a misstatement of our law. At the time *Neal* was rendered, our constitution, article 7, § 20, "Disqualification of judges – Grounds" provided:

> No judge or justice shall preside in the trial of any cause in the event of which he may be interested, or where either of the parties shall be connected with him by consanguinity or affinity, within such degrees as may be prescribed by law; or in which he may have been of counsel or have presided in an inferior court.

In *Neal*, the circuit judge was not disqualified as required by art. 7, section 22, for an appointment of a special judge. Therefore, no appointment was necessary, this court did not have jurisdiction or authority to appoint Judge Lineberger and likewise this court did not have jurisdiction to void the actions of an elected circuit court judge, Judge Neal. Accordingly, we must overrule *Neal*.

SLIP OPINION

do not argue a separation–of–powers issue.[15]

In sum, the decision to take the question of which justices constitute the court in *Smith v. Wright*, Case No. CV–14–427 as a separate case was made because that appeal cannot move forward until this fundamental question has been resolved. Had this court not taken action to resolve this fundamental question, the delay in deciding the appeal in *Smith v. Wright*, Case No. CV–14–427, would have been interminable. As is plain from this opinion, the answer to the question of which justices are to decide the primary appeal in *Smith v. Wright* is compelled by our constitution and our case law.

Last, we must note that our decision in this opinion supports the will of the people of the State of Arkansas. In November 2000, the electors in Arkansas approved amendment 80 by a vote of 431,137 to 323, 647. *See* amendment 80, Publisher's Notes. Further, in May 2014, the electors of Arkansas elected Justice Rhonda K. Wood to serve an eight-year term on the Arkansas Supreme Court, commencing on January 1, 2015. Thus, the people of Arkansas are empowered by our constitution to elect the justices of this court. Those justices are obligated to hear and decide all cases in which they have no disqualification.

Question answered; Wright's motion to withdraw response is moot; Wright's amended motion to withdraw response is granted; Wright's motion to dismiss is denied.

Special Justices BETTY C. DICKEY and SHAWN A. WOMACK join.

---

[15]Indeed, then Governor Mike Beebe's official appointment states that Special Justice McCorkindale was appointed to replace Justice Hoofman on Case No. CV–14–427. This court's decision in no way usurps the authority exercised by then Governor Beebe in appointing Special Justice McCorkindale.

Special Justice BRETT D. WATSON concurs.

HANNAH, C.J., and DANIELSON and WOOD, JJ., not participating.

**BRETT D. WATSON, Special Justice, concurring.** I agree that Special Justice McCorkindale's commission ended when Justice Hoofman's term ended and that Special Justice McCorkindale can thus no longer serve as a justice in Case No. CV-14-427 ("the marriage case"). I also agree that because Justice Wood's term on the court has begun, she can participate in the marriage case. The majority and I diverge on the scope of the opinion and whether to overrule *Neal v. Wilson*, 321 Ark. 70, 900 S.W.2d 177 (1995).

In reaching its decision, the majority opinion goes beyond what is needed. The question is whether Justice Wood or Special Justice McCorkindale can serve as a justice in the marriage case. The answer is found in the constitutional text and is supported by *Caldwell's Adm'r v. Bell & Graham*, 6 Ark. 227 (1845). I would limit our analysis to the facts and law essential to the issue at hand.

I also disagree with the decision to overrule *Neal*. It involved facts and law different from the case here. The parties there failed to tell this court that a new circuit judge had been elected and that the court thus did not need to reassign another circuit judge under Ark. Code Ann. § 16-10-101(b). *Neal* had nothing to do with special justices under Amendment 80 or its predecessor or the length of special justices' terms. Perhaps *Neal* was wrongly decided. But that is not something we must decide today. We should instead wait until a case arises with facts and legal issues similar to those in *Neal*. This is not that case.

For these reasons, I respectfully concur in the judgment.

22