Cite as 2019 Ark. 410

# SUPREME COURT OF ARKANSAS

No. CV–18–573

| | |
|---|---|
| RAY H. DAWSON, JR.<br><br>APPELLANT<br><br>V.<br><br>JANELLE D. STONER–SELLERS, INDIVIDUALLY AND AS TRUSTEE OF R&LD TRUST, R&LD TRUST II, AND R&LD TRUST III; JENNIFER BOUCHILLON, INDIVIDUALLY AND AS TRUSTEE OF R&LD TRUST AND R&LD TRUST III; JENNIFER BOUCHILLON AND LUETTA DAWSON, AS CO-TRUSTEES OF JDS TRUST AND JDS TRUST II; AND LUETTA DAWSON<br><br>APPELLEES | **Opinion Delivered:** December 19, 2019<br><br>APPEAL FROM THE CRITTENDEN COUNTY CIRCUIT COURT [NO. 18PR-15-77]<br><br>HONORABLE VICTOR L. HILL, JUDGE<br><br><br><br>AFFIRMED IN PART; REVERSED AND REMANDED IN PART. |

**ROBIN F. WYNNE, Associate Justice**

Ray Dawson Jr. appeals from an order of the Crittenden County Circuit Court denying his second amended petition to direct trustee to issue trusts reports and accountings and for removal of trustees and for other relief. At issue was the administration of several family trusts. He raises the following points on appeal: (1) The court lacked jurisdiction because the chief justice had no jurisdiction to assign the special judge; (2) The court erred when it relied on extrinsic evidence to determine the meaning of unambiguous trust documents; (3) If extrinsic evidence were relevant, the court erred by disregarding the R&LD settlor's near-contemporaneous statement of intent and the intent of the R&LD III settlor; (4) The court erred by not finding that Janelle breached her duties as trustee and not

removing her as trustee; (5) The court erred by not requiring an accounting; (6) The court erred by denying the request for a jury trial; (7) The court erred by not appointing a master; (8) The court erred by dismissing Jennifer and by denying the motion to set aside her dismissal or, alternatively, to grant a new trial; and (9) The court erred by not invalidating the 2014 trust amendments. We reverse the denial of a jury trial on Ray Jr.'s legal claims and remand for further proceedings, and we affirm in all other respects.

Intervenor Luetta Dawson and her husband Ray Dawson Sr.[1] were the initial beneficiaries of the following irrevocable trusts:

- R&LD Trust (created in 1986): grantor/settlor Luetta; trustee Ray Dawson Jr.; initial beneficiaries Luetta and Ray Sr.; secondary beneficiaries children of Ray Sr. and Luetta.[2]

- R&LD Trust II (1994): grantor/settlor Janelle; trustee Ray Jr.; initial beneficiaries Ray Sr. and Luetta; secondary beneficiaries Janelle and Ray Jr.

- R&LD Trust III (1996): grantor/settlor Ray Jr.; trustee Janelle; initial beneficiaries Ray Sr. and Luetta; secondary beneficiaries Janelle and Ray Jr.

The major assets of the R&LD trusts are tracts of farmland, which generate substantial rental income. All three trust agreements directed the trustees to pay sums "reasonably necessary for the support, maintenance, medical care, and education" of the initial beneficiaries during their lives, and upon the death of an initial beneficiary, to the surviving initial beneficiary for his or her life, and then to the secondary beneficiaries for the same purposes until

---

[1]Ray Dawson Sr. died in 2006.

[2]The three children of Ray Sr. and Luetta are Montie Hobson, Ray Dawson Jr., and Janelle Stoner-Sellers. Appellee Jennifer Bouchillon is Janelle's daughter.

termination of the trusts. The trustees were given broad enumerated powers, and in addition, the trust agreements stated: "It is the GRANTOR'S express intention to confer upon the TRUSTEE every power of management which might be conferred upon him." Additional trusts were created as follows:

• JDS Trust (1986): grantor/settlor Luetta; co-trustees Ray Jr. and Luetta; initial beneficiary Janelle; secondary beneficiaries Janelle's children.

• JDS Trust II (1994): grantor/settlor Ray Jr.; trustee Luetta; initial beneficiaries Luetta and Janelle; secondary beneficiaries appointed by Luetta's will or, if appointment power not exercised, Janelle's children.

In 1998, Ray Jr. resigned as trustee of the R&LD Trust and the R&LD Trust II, and Janelle became successor trustee. In June 2014, Ray Jr. sent Janelle, as trustee of the three R&LD trusts, a formal request for a report and accounting regarding the property of the trusts. In September 2014, Janelle executed amendments to the R&LD Trust and the R&LD Trust III naming her daughter Jennifer Bouchillon, who is a certified public accountant, as co-trustee and limiting the duty of a trustee to provide an accounting. Luetta likewise executed an amendment to the JDS Trust II to add Jennifer as co-trustee.

Ray Jr. filed suit in April 2015, seeking trust reports and accountings and also the removal of Janelle and Jennifer as the trustees of the three R&LD Trusts. Luetta was permitted to intervene in the action as an interested party. In February 2016, the court granted partial summary judgment to Ray Jr. and ordered Janelle and Jennifer to provide Ray Jr. with trust accounting information that he had requested. In April 2017, Ray Jr. filed the operative pleading in this matter—the second amended petition to direct trustee to issue

3

trusts reports and accountings and for removal of trustees and for other relief.[3] In the second amended petition, Ray Jr. alleged the following: failure to provide an accounting (Count I); breach of fiduciary duty (Count II); conversion (Count III); removal of trustees (Count IV); injunctive relief (Count V); fraud and concealment (Count VI); and conspiracy (Count VII). The gist of his complaint was that Janelle had used the R&LD trusts to benefit herself, and that she and Jennifer had breached their duties as trustees. Janelle and Jennifer answered and asserted the following affirmative defenses: failure to state facts upon which relief can be granted under Ark. R. Civ. P. 12(b)(6); dismissal pursuant to Ark. Code Ann. § 28-73-1006 (Repl. 2012); unclean hands; and estoppel and waiver. Luetta filed an answer that included the same affirmative defenses. In addition, Janelle and Jennifer, in their capacities as trustees, filed a counterclaim and an amended counterclaim against Ray Jr. In the amended counterclaim, they alleged that Ray Jr. had approached Luetta in January 2014 when she was ill and about to have brain surgery. At that time, he obtained lease extensions with the trusts for cash rent that was below market value. The trustees alleged undue influence, self-dealing, unjust enrichment, and breach of his duties to his co-beneficiaries; they demanded a trial by jury.

The circuit court held a bench trial on October 10–13 and December 19–21, 2017. The parties presented extensive testimony and documentary evidence during the trial. At the conclusion of Ray Jr.'s case-in-chief, the court dismissed the fraud and conspiracy causes

---

[3]Ray Jr. filed a third amended petition asserting claims against Luetta but later withdrew it.

of action and dismissed the petition in its entirety as to Jennifer.[4] The parties filed post-trial briefs, and on April 9, 2018, the court denied Ray Jr.'s petition and dismissed the action with prejudice. The court also denied and dismissed the counterclaim and denied all outstanding motions, including Ray Jr.'s motion for new trial or to set aside order on motion for judgment as a matter of law. Ray Jr. appealed.

*Jurisdiction of the Chief Justice to Appoint a Special Judge*

Ray Jr. argues that the chief justice lacked jurisdiction to assign the special judge in this case, Victor Hill, who thus also lacked jurisdiction. He contends that the chief justice lacked jurisdiction because not all judges in the circuit had recused. Jurisdiction is the power of the court to hear and determine the subject matter in controversy between the parties. *Ulmer v. Circuit Court of Polk Cty.*, 366 Ark. 212, 215, 234 S.W.3d 290, 293 (2006).

Here, a special judge was requested because the newly elected circuit judge would not have a "civil term" in Crittenden County in 2018. With the agreement of the assigned circuit judge, the administrative judge of the Second Judicial District wrote a letter to Chief Justice Kemp requesting appointment of recently retired Judge Victor Hill "for the sake of judicial economy"; Judge Hill had presided over the case before his retirement. On July 25, 2017, Chief Justice Kemp entered an order assigning the Hon. Victor Hill, retired circuit judge, to hear this case.

Amendment 80 provides as follows regarding the assignment of special judges in circuit court:

---

[4]This ruling was reflected in a written order filed January 30, 2018.

(C) If a Circuit or District Judge is disqualified or temporarily unable to serve, or if the Chief Justice shall determine there is other need for a Special Judge to be temporarily appointed, a Special Judge may be assigned by the Chief Justice or elected by the bar of that Court, under rules prescribed by the Supreme Court, to serve during the period of temporary disqualification, absence or need.

Ark. Const. amend. 80, § 13. Administrative Order No. 16 provides the procedures for the assignment of special judges by the chief justice. Administrative Order No. 16 authorizes the chief justice to assign (A) sitting circuit court judges, (B) retired circuit, chancery, circuit/chancery, and appellate court judges and justices, and (C) sitting state district court judges, with their consent, to serve temporarily in circuit court. Admin. Order No. 16(I). The bases for assignment are disqualification pursuant to the Arkansas Code of Judicial Conduct, temporary inability to serve, "*or* [o]ther *need as determined by the chief justice*." *Id*. § (II) (emphasis added). Section (III) of Admin. Order No. 16, which governs the process for requesting assignment of a special judge, provides that "[a]ll judges in the circuit must disqualify before an assignment will be made." The letter of request to the chief justice must include a statement that all the judges in the circuit have recused. *Id*. § (III)(A).

Ray Jr. relies on section (III) of Administrative Order No. 16, along with *Smith v. Wright*, 2015 Ark. 189, at 20 n.14, 461 S.W.3d 687, 699 n.14 (explaining the necessity of overruling *Neal v. Wilson*, 321 Ark. 70, 900 S.W.2d 177 (1995) because the elected circuit judge was not disqualified and this court lacked jurisdiction or authority to appoint a special judge under the circumstances of that case), for his argument that the chief justice lacks jurisdiction to appoint a special judge unless all judges in the judicial circuit have recused. However, Ray Jr. ignores the broad language of amendment 80 and section (II) of Admin. Order No. 16, which provide the chief justice with the authority to assign a special judge if

6

the chief justice determines there is "other need" for a special judge. Here, the chief justice apparently determined there was a need for a special judge for the sake of judicial economy due to the assigned circuit judge's docket.[5] No one objected to the assignment. These circumstances are clearly distinguishable from a disagreement between a duly elected judge or justice and an appointed judge or justice as to who should hear a case. *See Smith*, *supra*; *Neal*, *supra*.

We affirm on this point because the chief justice did not lack jurisdiction to appoint a special judge under the circumstances presented here.

*Jury Trial*

We address Ray Jr.'s sixth point on appeal next. Ray Jr. argues that the circuit court erred by denying the parties' requests for a jury trial. The applicable standard of review is that any claim to a jury trial is reviewed de novo on appeal. *Stokes v. Stokes*, 2016 Ark. 182, at 4, 491 S.W.3d 113, 117 (citing *First Nat'l Bank of DeWitt v. Cruthis*, 360 Ark. 528, 203 S.W.3d 88 (2005)). A jury trial is a fundamental constitutional right that is protected by article 2, section 7 of the Constitution of Arkansas. *See Walker v. First Commercial Bank, N.A.*, 317 Ark. 617, 880 S.W.2d 316 (1994). The right to a jury trial extends only to those cases that were subject to trial by jury at the common law. *Stokes*, *supra*. In Arkansas, this

---

[5]We acknowledge that the procedures set out in section (III) of Administrative Order No. 16 for requesting an assignment by the chief justice require the disqualification of all judges in a judicial circuit. Thus, the procedures fail to address an assignment based on other need as determined by the chief justice. Nonetheless, this gap in the procedures set out in section (III) does not affect the authority of the chief justice pursuant to amendment 80 to assign a special judge when he determines that a need exists.

7

court looks to the historical nature of the claim to determine whether a trial by jury is warranted. *Id.*

In the second amended petition, Ray Jr. demanded a jury trial "in connection with this cause of action." Janelle and Jennifer's answer included a demand for a trial by jury "as to all issues and claims alleged" in the second amended petition. The case was initially set for a four-day jury trial. After reviewing the proposed jury instructions, however, the court determined that the case was not appropriate to submit to a jury and wrote a letter to counsel so advising them. Janelle and Jennifer submitted a response to the court's letter and argued in favor of a jury trial, writing: "Trustees respectfully submit that it would . . . be error to deny a jury trial where the petition, affirmative defenses, and counterclaim all alleged legal causes of action and the parties have demanded a trial by jury." The circuit court entered an order denying the requests for a jury trial. The court noted that this was a trust case and that matters related to trusts were historically within the jurisdiction of the courts of equity; the court referenced and relied upon the clean-up doctrine.

On appeal, Ray Jr. argues that he asserted claims that historically were heard by a jury. First, he sought money damages, which is a legal remedy. In addition, Ray Jr. made the following claims, which also are traditionally heard by a jury:

- Breach of fiduciary duty (AMI Civ. 1512; *Rees v. Smith*, 2009 Ark. 169, 301 S.W.3d 467);

- Conversion (AMI Civ. 425; *Hudson v. Cook*, 82 Ark. App. 246, 105 S.W.3d 821 (2003);

- Fraud and concealment (AMI Civ. 402; *Delta Sch. of Commerce, Inc. v. Wood*, 298 Ark. 195, 201, 766 S.W.2d 424, 427 (1989));

8

- Conspiracy (AMI Civ. 714; *Pennington v. Harvest Foods, Inc.*, 326 Ark. 704, 934 S.W.2d 485 (1996)).

This court has explained that since the passage of amendment 80 to the Arkansas Constitution in 2000, there is no longer a need to elect in which court to file a lawsuit. *Tilley v. Malvern Nat'l Bank*, 2017 Ark. 343, at 7, 532 S.W.3d 570, 574. However, amendment 80 did not alter the jurisdiction of law and equity. *Id.* It only consolidated jurisdiction in the circuit courts. *Id.* The clean-up doctrine, which the circuit court relied on in this case, has been abolished in Arkansas:

> The clean-up doctrine was used to allow a chancery court to decide issues of law because, under that longstanding rule, once a chancery court acquired jurisdiction for one purpose, it could decide all other issues. *Id.* (citing *Douthitt v. Douthitt*, 326 Ark. 372, 930 S.W.2d 371 (1996)). Thus, the clean-up doctrine provided that, once a court of equity acquired jurisdiction over a case, it may decide all other issues, legal or equitable. *Colclasure v. Kansas City Life Ins. Co.*, 290 Ark. 585, 720 S.W.2d 916 (1986). However, we recently explained in *Stokes v. Stokes*, that "since amendment 80 was enacted, the *clean-up doctrine has disappeared* because any circuit court now has subject-matter jurisdiction to hear all justiciable matters not assigned elsewhere, and it has the power to grant all remedies to the parties before it." 2016 Ark. 182, at 5 n.3, 491 S.W.3d 113, 118 n.3 (emphasis added).
>
> We take this opportunity to clarify that after the enactment of amendment 80, the clean-up doctrine was abolished in Arkansas. Instead, we emphasize that in deciding whether a claim should be submitted to a judge as an equitable matter or to a jury as a legal matter, a circuit court must review the historical nature of the claim. *Nat'l Bank of Ark. v. River Crossing Partners, LLC*, 2011 Ark. 475, at 8, 385 S.W.3d 754, 759 (citing *Cruthis*, *supra*). Our opinions since 2001 have affirmed this historical test by looking to the remedies sought in the complaint. *Stokes*, *supra*. Accordingly, we overrule all prior decisions to the extent that they conflict with this opinion.

*Tilley*, 2017 Ark. 343, at 7–8, 532 S.W.3d at 574–75. In *Tilley*, this court held that the right to a jury trial did not extend to a foreclosure proceeding and affirmed the judgment for the bank on that claim but held that the circuit court erred in failing to submit Tilley's six legal

9

claims to a jury. Here, we conclude that the circuit court erred by denying Ray Jr. a jury trial on his legal claims.[6]

Janelle and Jennifer respond by arguing that Ray Jr. waived his jury-trial argument by failing to raise it below at the earliest possible opportunity. However, he requested a trial by jury in his second amended petition. Under Ark. R. Civ. P. 38, no more was required. Any party may demand a trial by jury of any issues triable of right by a jury by filing with the clerk a demand therefor in writing at any time after the commencement of the action and not later than 20 days before the trial date. *See* Ark. R. Civ. P. 38(a). A demand for jury trial may not be withdrawn without the consent of the parties. Ark. R. Civ. P. 38(c). A party's failure to object when the circuit court erroneously takes the case from the jury is not a waiver and does not bar the party from raising the issue on appeal. *See Winkle v. State*, 310 Ark. 713, 717, 841 S.W.2d 589, 591 (1992) (citing *Bussey v. Bank of Malvern*, 270 Ark. 37, 43, 603 S.W.2d 426, 430 (Ark. App. 1980)). Thus, we reject appellees' argument that Ray Jr. waived his right to a jury trial in this case.

In addition, Janelle and Jennifer argue that Ray Jr. is barred from making this argument by judicial estoppel and the doctrine of inconsistent positions because he requested appointment of a master, which is not available in a case in which there is a right to a jury trial. However, the record shows that Ray Jr. asked for appointment of a master only after the circuit court had made its ruling that there would be no jury trial in this matter. There is nothing inconsistent in Ray Jr.'s positions below and now on appeal. We also reject the

---

[6]Janelle and Jennifer also demanded a trial by jury on their counterclaim. However, they did not file a cross-appeal.

contention that the request for jury trial was "cryptic" because it was placed within the "DAMAGES" section of the petition and states that a jury trial is demanded "in connection with this cause of action." Reading the complaint as a whole, it is clear that he requested a jury trial of the entire matter.

In sum, the circuit court erred in denying Ray Jr. a jury trial on his legal claims: breach of fiduciary duty; conversion; fraud and concealment; and conspiracy. Accordingly, we reverse and remand for a jury trial on those claims. Ray Jr. is not entitled to a trial by jury on his equitable claims, and we affirm the judgment for appellees on his claims for failure to provide an accounting, removal of trustees, and injunctive relief.

*Extrinsic Evidence*

Ray Jr. also argues that the circuit court erred by relying on extrinsic evidence instead of unambiguous trust documents to determine settlor intent. The cardinal rule in construing a trust instrument is that the intention of the settlor must be ascertained. *Bailey v. Delta Tr. & Bank*, 359 Ark. 424, 432, 198 S.W.3d 506, 512 (2004). When the terms of a trust are unambiguous, it is the court's duty to construe the written agreement according to the plain meaning of the language employed. *Id.* An ambiguity has been defined as an indistinctness or uncertainty of meaning of an expression used in a written instrument. *Burnett v. First Commercial Tr. Co.*, 327 Ark. 430, 433, 939 S.W.2d 827, 829 (1997).

Ray Jr. contends that the R&LD trusts are unambiguous and the trustee must pay only what is reasonably necessary for the support, maintenance, medical care, and education of Luetta, the surviving initial beneficiary. He points to evidence that Janelle, as trustee, deferred to Luetta, the beneficiary, by signing blank checks and giving Luetta "*carte blanche*

11

over trust assets in a way that benefits the trustee." He primarily objects to the purchase of two houses with R&LD and R&LD II funds (1811 Horseshoe Circle for JDS Trust, of which Janelle was beneficiary, and 1820 Horseshoe Circle for JDS Trust II, of which Janelle was co-beneficiary); Janelle making R&LD and R&LD II joint debtors along with JDS Trust on a $3.45 million loan that has benefited JDS; and the failure to correct a $425,000 error in JDS's favor and against R&LD II. Of course, the appellees disagree with Ray Jr.'s characterization of this evidence. But the bottom line is that the phrase "reasonably necessary" is inherently ambiguous in the sense that it requires individual judgment. "Reasonably" means "in a way that shows good judgment."https://dictionary.cambridge. org/us/dictionary/english/reasonably (archived at https://perma.cc/3HDD–W4BH). Not everyone would agree on what is necessary for support and maintenance in a way that shows good judgment. Therefore, we hold that the circuit court did not err in looking to extrinsic evidence in construing the trust agreements.

*Settlor's Intent*

Under this point, Ray Jr. argues that if extrinsic evidence were relevant, the court erred by disregarding the R&LD settlor's (Luetta's) near–contemporaneous statement of intent and his intent as settlor of the R&LD Trust III. Luetta's "Statement of Intent" dated November 17, 1988, included the following: "I have no control over the Trustee or the Trust Corpus of the R&LD Trust, having relinquished all such control at the time of execution of the original Trust instrument." Ray Jr. introduced this document during his cross–examination of Luetta, and she confirmed that she wanted the trust to stand and wanted to protect the trust's assets. Ray Jr.'s argument that the document was disregarded

is not supported by the record. Rather, viewing the record as a whole, it appears the circuit court properly considered the entirety of the evidence of how the trusts had been administered and the parties' understanding regarding the trusts' provisions. *See Aycock Pontiac, Inc. v. Aycock*, 335 Ark. 456, 465, 983 S.W.2d 915, 921 (1998) ("Oral testimony is admissible only for the purpose of showing the meaning of the words used in the instrument when they are ambiguous, and not to show what the settlor intended, as distinguished from his expressed words."). Here, the circuit court properly considered extrinsic evidence to determine what the settlors meant when using the language "reasonably necessary" for the support and maintenance of the initial beneficiaries. The understanding of the majority of the parties was that the trusts should be used generously to fund the lifestyle to which Luetta was accustomed. We affirm on this point.

*Breach of Duty as Trustee*

Ray Jr. contends that the circuit court erred by not finding that Janelle breached her duties as trustee, not removing her as trustee pursuant to Ark. Code Ann. § 28-73-706(b), and not finding her personally liable. Because we reverse and remand for a jury trial on the breach-of-fiduciary-duty claim, we need not address this point on appeal.

*Accounting*

Next, Ray Jr. argues that the circuit court erred by not requiring an accounting. To remedy a breach of trust that has occurred or may occur, the court may order a trustee to account. Ark. Code Ann. § 28-73-1001(b)(4). Thus, an accounting is a remedy, not a separate cause of action. On this record, we hold that the circuit court did not err by denying Ray Jr.'s claim for failure to provide an accounting.

*Appointment of Special Master*

Ray Jr. argues that the circuit court abused its discretion in denying his motion for a special master. Pursuant to Ark. R. Civ. P. 53(a), a court *may* appoint a special master.

> A reference to a master shall be the exception and not the rule. Reference shall be made in only those cases where there is no right to trial by jury or where such right has been waived. Except in matters of account and difficult computation of damages, a reference shall be made only upon a showing that some exceptional condition requires it.

Ark. R. Civ. P. 53(b). Thus, the appointment of a special master was available regarding Ray Jr.'s request for an accounting, but the language of Rule 53(a) is discretionary. Before trial, Ray Jr. was granted partial summary judgment and appellees were ordered to provide information regarding trust assets and liabilities, income and distributions, and tax returns, among other things. There was testimony by the trustees and the R&LD trusts' accountant, as well as extensive documentary evidence introduced at trial. Ultimately, it was up to the circuit court to determine whether a special master was necessary. We are not persuaded that the circuit court abused its discretion in declining to appoint a master, and we affirm on this point.

*Dismissal of Jennifer*

Next, Ray Jr. argues that the circuit court erred in dismissing Jennifer and in denying his motion to set aside the dismissal or, alternatively, for a new trial. He points out that the same duties that applied to Janelle as trustee also applied to Jennifer, and he asserts that there was sufficient evidence for fair-minded persons to conclude that Jennifer breached her duties as trustee. Because we reverse and remand for a jury trial on the breach-of-fiduciary-duty claim, we need not address this point on appeal.

14

Finally, Ray Jr. argues that the circuit court erred in not invalidating the 2014 trust amendments because his consent, as a secondary beneficiary, was not obtained. He cites Arkansas Code Annotated sections 28-69-401(a)[7] and 28-73-411(a)(1) ("A noncharitable irrevocable trust may be modified or terminated upon consent of the settlor and all beneficiaries, even if the modification or termination is inconsistent with a material purpose of the trust."). However, the express terms of the trusts permitted the amendments at issue:

> This Declaration of Trust may be amended by the TRUSTEE in any respect and at any time; provided that no said amendment shall diminish or otherwise alter the share or right of the INITIAL BENEFICIARIES or SECONDARY BENEFICIARIES in or to the principal of the TRUST property or the income therefrom without the consent of said INITIAL BENEFICIARIES or SECONDARY BENEFICIARIES.

R&LD Trust, ¶ XVI; R&LD Trust III, ¶ XVI (virtually identical language). Thus, we find no merit in Ray Jr.'s argument that the court erred in not invalidating the 2014 trust amendments making Jennifer co-trustee and limiting the beneficiaries' rights to an accounting. *See* Ark. Code Ann. § 28-73-105 (providing that terms of a trust prevail over provisions of the Arkansas Trust Code with exceptions not applicable here).

---

[7]Ark. Code Ann. § 28-69-401(a) provides:

By written consent of the settlor and all named beneficiaries of a trust or any part thereof, regardless of any spendthrift or similar protective provisions, the trust or part thereof may be revoked, modified, or terminated upon a finding by the court having jurisdiction over the trust, or otherwise being of competent jurisdiction, that the trust's purposes, as expressed in or implied by the circumstances surrounding the trust, as a result of circumstances not foreseen to the settlor are not effectively being fulfilled or are frustrated.

*Conclusion*

For the reasons set out above, we affirm in part and reverse and remand in part.

Special Justice JIM D. SPEARS joins in this opinion.

WOOD, J., concurs.

HART, J., dissents.

KEMP, C.J., not participating.


**JOSEPHINE LINKER HART, Justice, dissenting.** The Chief Justice's authority to appoint a special judge arises from the supreme court's general superintending authority over the inferior courts of this state. Ark. Const. amend. 80, § 4.[1] With regard to the appointment of special judges, the power is vested in the supreme court. *Id.* Amendment 80 specifies that the "supreme court shall be composed of seven Justices, one of whom shall serve as Chief Justice." Ark. Const. amend. 80, § 2. The process of temporarily assigning a judge is only "administered" by the Chief Justice. Ark. Const. amend. 80, § 4.

Because the authority to appoint a special judge is likewise vested in the supreme court, pursuant to amendment 80, section 13(C),[2] the Chief Justice only has the authority

---

[1]The Supreme Court shall exercise general superintending control over all courts of the state and may temporarily assign judges, with their consent, to courts or divisions other than that for which they were elected or appointed. These functions shall be administered by the Chief Justice.

[2](C) If a Circuit or District Judge is disqualified or temporarily unable to serve, or if the Chief Justice shall determine there is other need for a Special Judge to be temporarily appointed, a Special Judge may be assigned by the Chief Justice or elected by the bar of that Court, under rules prescribed by the

16

granted by our rules. In this case, the applicable rule is Administrative Order No. 16. Like

all of our Administrative Orders, No. 16 is passed by a majority of the supreme court and

operates as a standing rule. Through Administrative Order No. 16, the supreme court has

granted the Chief Justice the authority to appoint a special judge in a judicial district with

more than one judge only when all the other judges in the district have recused. Admin.

Order No. 16(III).[3] It is not disputed that all the judges in the judicial district did not recuse.

---

Supreme Court, to serve during the period of temporary disqualification, absence or need.

[3]Administrative Order No. 16, Section III Request for Assignment.

*Circuit Courts*: A trial judge requesting that a judge be assigned shall write a letter to the Chief Justice asking that an assignment be made pursuant to one or more of the bases set forth in Section II. In cases of disqualification in judicial circuits with more than one judge, the process in the circuit's administrative plan should be followed. All judges in the circuit must disqualify before an assignment will be made. One judge in the circuit is responsible for writing the letter of request, sufficient in detail to inform the Chief Justice of the following:

A. that all the judges in the circuit have recused;

B. the type of case involved;

C. the facts or law in dispute;

D. whether a temporary hearing is scheduled or necessary;

E. the estimated time to hear the matter;

F. the names of the attorneys representing the parties; and

G. other pertinent information to assist the Chief Justice in making an assignment.

. . . .

*Circuit or District Courts*: A judge or judges recusing because of disqualification shall take no further action in a case after assignment, except that the judge

Accordingly, the Chief Justice did not have the authority to appoint retired judge Victor L. Hill to try the case. When a circuit judge elected by the people of that judicial district is available, he or she must serve before another judge may be appointed. *Smith v. Wright*, 2015 Ark. 189, 461 S.W.3d 687.

Jurisdiction is the power or authority of the court to act. *W. Memphis Sch. Dist. v. Circuit Court of Crittenden Cty.*, 316 Ark. 290, 871 S.W.2d 368 (1994). When a circuit court acts without jurisdiction, its orders and judgments are void. *Rose v. Harbor E., Inc.*, 2013 Ark. 496, 430 S.W.3d 773. Because the Chief Justice failed to comply with the Arkansas Constitution and Administrative Order No. 16, appointment of retired judge Victor L. Hill was unlawful. Accordingly, Mr. Hill had no authority to hear this case. Thus, this case must be reversed and dismissed.

I respectfully dissent.

*Andrea Brock* and *Rita Reed Harris*; and *Brett D. Watson, Attorney at Law, PLLC*, by: *Brett D. Watson*, for appellant.

*Friday, Eldredge & Clark, LLP*, by: *William A. Waddell, Jr.*, and *Lindsey H. Emerson* for appellees.

---

requesting an assignment shall direct his or her staff to notify the attorneys or pro se litigants of the assignment and to accommodate, to the extent possible, an assigned judge regarding facilities and staff, when necessary, to carry out the assignment.