2017 Ark. 343

**Kenneth W. TILLEY, Individually and as Trustee of the Kenneth Tilley Family Trust, Appellant**

v.

**MALVERN NATIONAL BANK and Stephen Moore, Appellees**

No. CV–17–220

Supreme Court of Arkansas.

Opinion Delivered: December 7, 2017

Eichenbaum Liles P.A., Little Rock, by: James H. Penick III, and Joshua Allen, for appellant.

Wright, Lindsey & Jennings LLP, Little Rock, by: Charles T. Coleman, Adrienne

L. Baker, and Kristen S. Moyers, for appellees.

KAREN R. BAKER, Associate Justice

Appellant Kenneth W. Tilley, individually and as trustee of the Kenneth Tilley Family Trust ("Tilley"), appeals the Garland County Circuit Court's judgment and decree of foreclosure finding in favor of appellee Malvern National Bank ("MNB") and against Tilley on his counterclaims against MNB and his third-party complaint against Stephen Moore ("Moore"), the former vice president of commercial lending at MNB. On appeal, Tilley argues that (1) the circuit court erred in granting MNB and Moore's motion to strike Tilley's jury-trial demand and (2) the circuit court abused its discretion by granting MNB and Moore's motion in limine to exclude Tilley's future lost-profit damages. This appeal involves the interpretation and construction of the Arkansas Constitution; therefore, our jurisdiction is proper pursuant to Arkansas Supreme Court Rule 1–2(a)(1). We reverse and remand.

*Facts and Procedural History*

On July 7, 2010, Tilley and MNB entered into a loan agreement and executed a promissory note in the amount of $221,000. To secure payment of the note, Tilley granted MNB a mortgage interest in real property located in Garland County, Arkansas. As relevant to the present appeal, the loan agreement included a jury-waiver clause.

On November 8, 2011, MNB filed a complaint against Tilley alleging that Tilley defaulted on the loan agreement and therefore sought foreclosure of the mortgage and replevin of certain personal property.[1] On February 27, 2012, Tilley filed an answer to MNB's complaint and demanded a right to a trial by jury.

On October 1, 2012, Tilley filed a counterclaim against MNB and a third-party complaint against Moore. Tilley alleged that in October 2009, Tilley was working on two land-development projects, one in Garland County and one in Logan County. Once the Garland County property was finalized, Tilley intended to sell individual tracts of land. The Logan County property was to be used as a recreational facility. In order to fund the developments, Tilley sought financing from multiple financial institutions, including MNB. Tilley met with Moore and explained that he would need $350,000 to fund both developments. Moore promised that MNB would deliver $250,000 within thirty days, and the remaining $100,000 would be made available to Tilley as soon as he sold five or six tracts in Garland County. Based on Moore's promises, Tilley decided to finance his developments through MNB. Tilley never received the $350,000 loan. In April 2010, Tilley was informed by an officer of MNB that Moore was no longer employed by MNB. Tilley ultimately entered into the $221,000 loan agreement instead of the $350,000 agreement that Tilley and Moore had allegedly agreed upon. Tilley contended that MNB's failure to fulfill the promise to loan him $350,000 caused him to default on the $221,000 loan. In Tilley's counterclaim and third-party complaint, Tilley raised six causes of action: (1) breach of contract/breach of the duty of good faith and fair dealing; (2) promissory estoppel; (3) violation of the Arkansas Deceptive Trade Practices Act; (4) tortious interference with a business relationship or expectancy; (5) negligence; and (6) deceit/fraud in the inducement. Tilley requested "a full and final adjudication of the causes of action raised herein by a jury."

---

1.  MNB's replevin claim was settled.

The circuit court notified the parties that the case was set for a three-day jury trial scheduled for April 29 through May 1, 2015. On April 13, 2015, MNB and Moore filed a motion to strike Tilley's jury-trial demand. MNB and Moore argued that it is well established under Arkansas law that a foreclosure claim must be tried in equity, without a jury. Further, Tilley was not entitled to a jury trial on his claims because they arose from the same nexus of operative facts as MNB's foreclosure claim and were essential to the foreclosure proceeding. Finally, MNB and Moore argued that in executing the loan |₄agreement containing a jury-waiver clause, Tilley had agreed to waive his right to a jury trial.

On April 15, 2015, Tilley filed his response and argued that the clean-up doctrine is no longer viable. Tilley contended that the claims at issue are legal matters and must be submitted to a jury. Finally, under his argument section entitled "Waiver," Tilley asserted that "[t]he Arkansas Constitution, Article 2, Section 7, provides that the right to a jury trial 'shall remain inviolate', a principle which is applied with regard to waivers." Tilley then argued that for a waiver to exist, the waiver must be knowingly, intelligently, and voluntarily made.

In an April 22, 2015 letter from the circuit court to the parties, the circuit court announced that it agreed with MNB and Moore and therefore granted the motion to strike the jury-trial demand as to all claims. The circuit court entered its written order granting MNB and Moore's motion to strike Tilley's jury-trial demand on April 29, 2015. After a bench trial, the circuit court ruled in favor of MNB on its foreclosure claim and against Tilley on his counterclaims and third-party complaint. On July 29, 2015, the circuit court entered a judgment and decree of foreclosure. On August 7, 2015, Tilley filed a motion for new trial, which was deemed denied. Tilley timely filed his notice of appeal.

On March 1, 2017, the Arkansas Court of Appeals affirmed the circuit court's decision, finding that although *Tilley* had a constitutional right to a jury trial on his legal claims, the jury-waiver clause in the loan agreement was enforceable and Tilley waived his right to a jury trial. *Tilley v. Malvern Nat'l Bank*, 2017 Ark. App. 127, 515 S.W.3d 636. On |₅March 20, 2017, Tilley filed a petition for review, which this court granted on May 25, 2017. When we grant a petition for review, we treat the appeal as if it had been originally filed in this court. *Russell v. Russell*, 2013 Ark. 372, 430 S.W.3d 15.

## I. *Right to a Jury Trial*

On appeal, Tilley argues that the circuit court erred in denying Tilley his constitutional right to a jury trial on his legal claims pursuant to the clean-up doctrine and the loan agreement's predispute jury-waiver clause. Specifically, Tilley argues that (1) he had a constitutional right to a jury trial on all of his legal claims asserted against MNB and Moore; (2) predispute contractual waivers of the right to a jury trial are unenforceable under the Arkansas Constitution; (3) MNB and Moore waived any right to enforce the jury-waiver clause; (4) Tilley did not knowingly and voluntarily waive his right to a jury trial; and (5) the jury-waiver clause does not apply to his third-party claims against Moore.

■ As an initial matter, MNB and Moore argue that Tilley's appeal of the right-to-a-jury-trial argument is untimely because Tilley was required to appeal this issue when his jury-trial demand was struck. Specifically, MNB and Moore argue that Tilley was required to appeal the circuit court's April 29, 2015 order within 30 days. Thus, they contend that because

Tilley waited until after the final order had been entered, his appeal is untimely and we lack jurisdiction to consider any portion of Tilley's appeal that addresses the jury-trial issue. We disagree. We have specifically held that a party may not bring an interlocutory appeal from the denial of a jury-trial demand. *Liberty Life Ins. Co. v. McQueen,* 364 Ark. 367, 219 S.W.3d 172 (2005). Thus, Tilley's appeal of the right-to-a-jury-trial argument is timely.

We employ a de novo standard of review for claims to a right to a jury trial. *See First Nat'l Bank of DeWitt v. Cruthis,* 360 Ark. 528, 203 S.W.3d 88 (2005). We are not bound by the decision of the circuit court; however, in the absence of a showing that the circuit court erred in its interpretation of the law, that interpretation will be accepted as correct on appeal. *Id.*

### A. Right to a Jury Trial: Amendment 80 & Clean–Up Doctrine

For his first point on appeal, Tilley argues that the circuit court erred in granting MNB and Moore's motion to strike Tilley's jury-trial demand on the basis that the clean-up doctrine allowed the court to hear Tilley's legal counterclaims and third-party claims. MNB and Moore respond that because this appeal arises out of a foreclosure action, the circuit court properly heard Tilley's claims because his claims were essential to the foreclosure proceeding.

This implicates amendment 80 to the Arkansas Constitution and its effect on jurisdiction formerly residing in circuit and chancery courts. *Id. In Cruthis,* we explained:

> Amendment 80 to the Arkansas Constitution merged the chancery and circuit courts. Section 6(A) of Amendment 80 to the Arkansas Constitution provides "Circuit Courts are established as the trial courts of original jurisdiction of

all justiciable matters not otherwise assigned pursuant to this Constitution." As a consequence of Amendment 80, courts that were formerly chancery and circuit courts are now referred to as circuit courts. Because Amendment 80 states that circuit courts assume the jurisdiction of chancery courts, circuit courts simply have added to their already existing jurisdiction as a court of law the equitable jurisdiction which chancery courts held prior to adoption of the Amendment. In other words, no new or expanded jurisdiction beyond that formerly existing in the chancery and circuit courts was created through Amendment 80. Rather, circuit court jurisdiction now includes all matters previously cognizable by circuit, chancery, probate, and juvenile court.

360 Ark. at 533, 203 S.W.3d at 91–92 (internal citations omitted). Since the passage of amendment 80 to the Arkansas Constitution in 2000, there is no longer a need to elect in which court to file a lawsuit. *Id.* However, amendment 80 did not alter the jurisdiction of law and equity. *Id.* It only consolidated jurisdiction in the circuit courts. *Id.*

We have stated that a foreclosure proceeding is an equitable proceeding. *Riggin v. Dierdorff,* 302 Ark. 517, 790 S.W.2d 897 (1990). The constitutional right to a jury trial does not extend to a foreclosure proceeding. *Id.* Thus, the circuit court properly considered the foreclosure claim without a jury and we therefore affirm.

Pursuant to the clean-up doctrine, MNB and Moore argue that Tilley's counterclaims and third-party claims must also be submitted to a judge. However, we disagree. The clean-up doctrine was used to allow a chancery court to decide issues of law because, under that longstanding rule, once a chancery court acquired jurisdiction

for one purpose, it could decide all other issues. *Id.* (citing *Douthitt v. Douthitt*, 326 Ark. 372, 930 S.W.2d 371 (1996)). Thus, the clean-up doctrine provided that, once a court of equity acquired jurisdiction over a case, it may decide all other issues; legal or equitable. *Colclasure v. Kansas City Life Ins. Co.*, 290 Ark. 585, 720 S.W.2d 916 (1986). However, we recently explained in *Stokes v. Stokes*, that "since amendment 80 was enacted, the *clean-up doctrine has disappeared* because any circuit court now has subject-matter jurisdiction to hear all justiciable matters not assigned elsewhere, and it has the power to grant all remedies to the parties before it." 2016 Ark. 182, 5 n.3, 491 S.W.3d 113, 118 n.3 (emphasis added).

■ We take this opportunity to clarify that after the enactment of amendment 80, the clean-up doctrine was abolished in Arkansas. Instead, we emphasize that in deciding whether a claim should be submitted to a judge as an equitable matter or to a jury as a legal matter, a circuit court must review the historical nature of the claim. *Nat'l Bank of Ark. v. River Crossing Partners, LLC*, 2011 Ark. 475, at 8, 385 S.W.3d 754, 759 (citing *Cruthis, supra*). Our opinions since 2001 have affirmed this historical test by looking to the remedies sought in the complaint. *Stokes, supra.* Accordingly, we overrule all prior decisions to the extent that they conflict with this opinion.

■ With the above standard in mind, we now turn to the six causes of action Tilley raised in his counterclaim and third-party complaint: (1) breach of contract/breach of the duty of good faith and fair dealing; (2) promissory estoppel; (3) violation of the Arkansas Deceptive Trade Practices Act; (4) tortious interference with a business relationship or expectancy; (5) negligence; and (6) deceit/fraud in the inducement. We conclude that Tilley's claims historically have been submitted to a jury as legal matters. Further, the sole remedy sought in these claims was money damages. In cases such as the one before us, a circuit court must review the historical nature of the claims to determine whether they should be submitted to a judge as equitable matters or to a jury as legal matters. Based on the historical nature of Tilley's claims and the remedy sought, these legal claims should have been submitted to the jury. Therefore, we hold that the circuit court erred in granting MNB and Moore's motion to strike Tilley's jury-trial demand and thereby failing to submit Tilley's legal claims to the jury.

### B. Right to a Jury Trial: Predispute Jury–Waiver Clause

■ Having found that the circuit court erred in failing to submit Tilley's legal counterclaims and third-party claims to the jury, we now consider whether the circuit court erred in granting MNB and Moore's motion to strike Tilley's jury-trial demand based on the jury-waiver clause contained in the loan agreement. On appeal, Tilley argues that predispute contractual waivers of the right to a jury trial are unenforceable under the Arkansas Constitution. In response, MNB and Moore argue that Tilley failed to preserve this argument for appeal. Specifically, MNB and Moore contend that Tilley did not raise his jury-waiver argument until his reply to MNB and Moore's response to his motion for a new trial. For the reasons that follow, we disagree with MNB and Moore's position that Tilley failed to preserve his argument regarding the unenforceability of predispute contractual waivers of the right to a jury trial under the Arkansas Constitution.

On February 27, 2012, Tilley filed an answer to MNB's complaint and demanded

a right to a trial by jury. On October 1, 2012, Tilley filed a counterclaim against MNB and Moore and requested "a full and final adjudication of the causes of action raised herein by a jury." Thus, from 2012 to April 13, 2015, when MNB and Moore filed a motion to strike Tilley's jury-trial demand, the parties and the court proceeded on the premise that the matter would be tried before a jury. Further, the record contains MNB and Moore's acknowledgment of the circuit court's notice of a three-day jury trial scheduled for April 29 through May 1, 2015. Additionally, the record contains MNB and Moore's proposed jury instructions.

Yet, for the first time, in their April 13, 2015 motion to strike Tilley's jury-trial demand, MNB and Moore took the position that Tilley was not entitled to a jury trial on his claims or on MNB's claims because the entire case must be tried in equity, without a jury. Further, MNB and Moore argued that the clean-up doctrine required this case to be tried to a court rather than a jury, and amendment 80 did not alter the jurisdiction of law and equity. Finally, MNB and Moore argued that in executing the loan agreement containing a jury-waiver clause, Tilley agreed to waive his right to a jury trial.

Subsequent to this challenge to Tilley's request for a jury trial, on April 15, 2015, Tilley filed his response and argued that the clean-up doctrine is no longer viable. Further, Tilley asserted that after the passage of amendment 80, there is only one circuit court and the court must comply with the following standard:

> In cases like the one before us, a circuit court must review the historical nature of the claims to determine whether they should be submitted to a judge as equitable matters or to a jury as legal matters.

Nat'l Bank of Ark., 2011 Ark. 475, at 10, 385 S.W.3d at 761. Tilley contended that the claims at issue are legal matters and must be submitted to a jury. Finally, under his argument section entitled "Waiver," Tilley asserted that "[t]he Arkansas Constitution, Article 2, Section 7, provides that the right to a jury trial 'shall remain inviolate', a principle which is applied with regard to waivers." Tilley then argued that for a waiver to exist, the waiver must be knowingly, intelligently, and voluntarily made. In sum, Tilley clearly resisted all of MNB and Moore's claims asserting that he was not entitled to a jury trial.

During the April 17, 2015 hearing on the motions in limine, Tilley again asserted that the constitution protects one's right to a jury trial. Although couched in response to MNB and Moore's clean-up-doctrine argument, Tilley argued that "to take away the right to a jury trial, which the Constitution, as we know, protects, just because of the ancient and antiquated notion of some kind of cleanup, . . . makes no sense now when we've got one Court[.]" At the conclusion of the hearing, the circuit court took the motion to strike the jury-trial demand under advisement. In an April 22, 2015 letter from the circuit court to the parties, the circuit court announced that "[a]fter consideration of the pleadings and arguments presented" the court agreed with MNB and Moore and granted the motion to strike the jury-trial demand. The circuit court entered its written order granting MNB and Moore's motion to strike Tilley's jury-trial demand on April 29, 2015.

We have said that an appellant must present his or her theory to the circuit court at the earliest opportunity in order to preserve it for appeal. *See Plymate v. Martinelli*, 2013 Ark. 194, 2013 WL 1932918. Here, at his first opportunity to respond to the motion to strike his demand

for a jury trial, Tilley did, in fact, present his constitutional right-to-a-jury-trial argument to the circuit court. Specifically, with regard to waivers, Tilley cited the precise article and section of the Arkansas Constitution mandating that the right to a jury trial "shall remain inviolate." Although Tilley expanded his arguments in response to MNB and Moore's arguments involving the clean-up doctrine and amendment 80, Tilley consistently maintained his position that the Arkansas Constitution protects one's right to a jury trial. This position clearly encompassed his argument regarding the unenforceability of predispute contractual waivers of the right to a jury trial under the Arkansas Constitution. Based on the foregoing, we hold that Tilley properly preserved his argument for appellate review.

■ Having determined that Tilley preserved his argument for our review, we now turn to the jury-waiver clause at issue, which states:

JURY WAIVER CLAUSE: Each party to this Agreement hereby expressly waives any right to trial by jury of any claim, demand, action or cause of action (1) arising under this Agreement or any other instrument, document or agreement executed or delivered in connection herewith, or (2) in any way connected with or incidental to the dealings of the parties hereto or any of them with respect to this Agreement or any other instrument, document or agreement executed or delivered in connection herewith, or the transactions related hereto or thereto, in each case whether now existing or hereafter arising and whether sounding in contract or tort or otherwise; and each party hereby agrees and consents that any such claim, demand, action or cause of action shall be decided by court trial without a jury[.]

On appeal, MNB and Moore contend that a predispute jury-waiver clause is enforceable under the Arkansas Constitution. To support their position, MNB and Moore assert that Arkansas allows parties to enter into contracts that control the manner in which their disputes are resolved, including the forum or the governing law. In fact, MNB and Moore argue that parties can choose to forgo the civil justice system altogether and submit to arbitration.

The Arkansas Constitution states that "[t]he right of trial by jury shall remain inviolate, and shall extend to all cases at law, without regard to the amount in controversy; but a jury trial may be waived by the parties in all cases in the manner prescribed by law. Ark. Const. art. 2, § 7. Black's Law Dictionary defines "inviolate" as "free from violation; not broken, infringed, or impaired." Black's Law Dictionary 904 (9th ed. 2009).

When tasked with interpreting the phrase "in the manner prescribed by law," this court has stated:

Obviously, those who drafted the constitutional amendment had the purpose and intention to invest in the Legislature the authority to determine what actions on the part of a litigant constituted a waiver of the right of trial by jury; we say 'obviously' because there could have been no other purpose in the provision, 'but a jury trial may be waived by the parties in all cases in the manner prescribed by law'. This provision, of course, includes prospective laws. The General Assembly is the law-making power, and it proceeded, in passing Act 460 of 1949 [of which 27-1743.2 is a part], to prescribe and enumerate various acts by which a defendant waives a trial by jury.

Mode v. Barnett, 235 Ark. 641, 645, 361 S.W.2d 525, 527 (1962). Further, in Venable v. Becker, we found that a valid waiver

of the right to a trial by jury occurred in the manner prescribed by Rule 38 of the Arkansas Rules of Civil Procedure and the former statute that Rule 38 superseded, Ark. Stat. Ann. § 27–1743. Thus, this court has consistently interpreted the phrase "in the manner prescribed by law," to be governed by Arkansas statutes and the Arkansas Rules of Civil Procedure.

Based on the foregoing, we do not find MNB and Moore's comparison of a jury-waiver clause and an arbitration clause persuasive. As Tilley correctly notes, arbitration agreements are governed by the Arkansas Arbitration Act as codified in Ark. Code Ann. §§ ⌊₁₄16–108–201 et seq. Because arbitration agreements are governed by the Arkansas Code, in executing a contract containing an arbitration clause, a party waives its right to a jury trial "in a manner prescribed by law." Thus, arbitration agreements are clearly enforceable under the Arkansas Constitution. However, the same cannot be said for predispute jury-waiver clauses because no Arkansas statute or Arkansas rule of civil procedure expressly provides for predispute waivers of the right to a jury trial.

Pursuant to *Venable, supra,* we now turn to the Arkansas Rules of Civil Procedure, which govern the manner in which one may validly waive one's right to a jury trial. Rule 38(a) provides that a party may demand a jury trial at any time after the commencement of the action, but no later than 20 days prior to the trial date. The failure to demand a jury trial within this time period constitutes waiver. Rule 38(c) states that a demand for trial by jury may not be withdrawn without the consent of the parties. Further, Rule 39(a) provides "that the trial of all issues so demanded shall be by jury, unless (1) the parties or their attorneys of record, by written stipulation filed with the court or by an oral stipulation made in open court and entered

in the record, consent to trial by the court sitting without a jury or (2) the court, upon motion or of its own initiative, finds that a right of trial by jury of some or all of those issues does not exist under the Constitution or statutes of this State."

Accordingly, as stated by the plain language of Rule 39, waivers of the right to a jury trial may take place only after a jury demand has been made. While Reporter's Notes are not binding precedent, this court has held that they may offer guidance as to a rule's ⌊₁₅meaning or intent. *Francis v. Protective Life Ins. Co.,* 371 Ark. 285, 292, 265 S.W.3d 117, 122 (2007) (citing *Velek v. State (City of Little Rock),* 364 Ark. 531, 222 S.W.3d 182 (2006)). The Reporter's Note to Rule 39 states that "[t]he purpose behind this rule is to insure that when a jury trial has been requested, it will be granted on all issues triable by jury unless the parties *thereafter* affirmatively waive this right." Ark. R. Civ. P. 39 reporter's note 1 (emphasis added). Thus, Rule 39(a)(1) applies only after a jury-trial demand has been made and does not contemplate predispute jury waivers. In other words, a jury trial cannot be waived before litigation begins.

The right to a jury trial is a fundamental, constitutional right that is protected by the Constitution of Arkansas, and procedural rules will not be applied to diminish that right. *Walker v. First Commercial Bank, N.A.,* 317 Ark. 617, 622, 880 S.W.2d 316, 319 (1994). Accordingly, we hold that predispute contractual jury waivers are unenforceable under the Arkansas Constitution. Because we hold that the circuit court erred in denying Tilley his constitutional right to a jury trial on his legal claims pursuant to the clean-up doctrine and the loan agreement's predispute jury-

waiver clause, we reverse and remand.[2]

## II. *New–Business Rule*

For his final point on appeal, Tilley argues that the circuit court abused its discretion by granting MNB and Moore's motion in limine to exclude Tilley's future lost-profit damages. Tilley contends that the circuit court based its erroneous finding that such damages are not recoverable in Arkansas under a per se new-business rule set forth in *Marvell Light & Ice Co. v. General Electric Co.* 162 Ark. 467, 259 S.W. 741 (1924). Tilley asserts that *Marvell* has not been followed by an Arkansas court for almost a century and is inconsistent with the current law in Arkansas. Tilley asserts that this issue will likely arise in a subsequent trial and thus urges this court to consider whether a per se rule against recovery of lost profit damages for a new business applies in Arkansas.

In response, MNB and Moore argue that Tilley's lost-profit evidence should have been excluded under the new-business rule. MNB and Moore argue that *Marvell* has not been overturned by this court. Alternatively, they assert that Tilley's appeal on this basis is moot. MNB and Moore contend that, despite granting their motion in limine, the circuit court allowed Tilley to introduce evidence at trial to show that the business ventures in question were not new business ventures.

Because Tilley's argument regarding the per se new-business rule will likely arise on retrial, we agree that it should be addressed now. *Marvell* stands for the proposition that under the new-business rule, evidence of lost profits is inadmissible because the "anticipated profits of the new business are too remote, speculative, and uncertain to support a judgment for their loss." *Marvell*, 162 Ark. at 470, 259 S.W. at 741. However, in subsequent cases we have held that when a party seeks to recover anticipated profits, he or she must present a reasonably complete set of figures to the jury and should not leave the jury to speculate as to whether there could have been any profits. *American Fidelity Fire Ins. v. Kennedy Bros. Constr., Inc.,* 282 Ark. 545, 670 S.W.2d 798 (1984). We hold today that the standard set forth in *American Fidelity Fire Insurance* is applicable even when there is an allegation of lost profits from a new business venture. Thus, we overrule *Marvell* to the extent that it holds that there is a per se new-business rule preventing lost profits unless the business is an old business.

Affirmed in part; reversed and remanded in part; court of appeals' opinion vacated.

Special Justice Jonathan Q. Warren joins in this opinion.

Goodson, Wood, and Womack, JJ., dissent.

KEMP, C.J., not participating.

Courtney Hudson Goodson, Justice, dissenting.

Because the majority errs in reaching the merits of Tilley's argument that prelitigation waivers of the right to a jury trial are unenforceable under the Arkansas Constitution, I respectfully dissent.

In reversing the circuit court's order striking Tilley's jury-trial demand, the majority accepts Tilley's argument that the Arkansas Constitution prohibits pre-litigation waivers of the right to a jury trial. Regardless of the merits of Tilley's argument, it should not be considered because

**2.** Because we hold that predispute contractual jury waivers are unenforceable, we do not address Tilley's remaining arguments regarding jury waivers.

Tilley first raised it in his reply to appellees' response to his motion for a new trial. We have long held that arguments made for the first time in a motion for a new trial are not timely.

> This court has repeatedly held that an objection first made in a motion for new trial is not timely. *Switzer v. Shelter Mut. Ins. Co.*, 362 Ark. 419, 208 S.W.3d 792 (2005); *Tate–Smith v. Cupples*, 355 Ark. 230, 134 S.W.3d 535 (2003); *Lee v. Daniel*, 350 Ark. 466, 91 S.W.3d 464 (2002). Any error argued on appeal must have first been directed to the circuit court's attention in some appropriate manner so that the court has an opportunity to address the issue. *Stacks v. Jones*, 323 Ark. 643, 916 S.W.2d 120 (1996). A party cannot wait until the outcome of a case to bring an error to the circuit court's attention. *Jones v. Double "D" Props., Inc.*, 352 Ark. 39, 98 S.W.3d 405 (2003).

*Quarles v. Courtyard Gardens Health & Rehab., LLC*, 2016 Ark. 112, at 11–12, 488 S.W.3d 513, 521. This is true even when the issue is constitutional in nature. *Plymate v. Martinelli*, 2013 Ark. 194, 2013 WL 1932918. Moreover, the appellant must present his or her theory to the circuit court at the earliest opportunity in order to preserve it for appeal. *Id.*; *see Lucas v. Jones*, 2012 Ark. 365, 423 S.W.3d 580 (holding the argument that the state and federal constitutions required appointed counsel in adoption proceeding was not preserved). Tilley's constitutional argument is one step further removed from being timely than those in *Courtyard Gardens*. This is because Tilley did not make his argument in his motion for a new trial itself, but only in his reply to MNB and Moore's response to his motion for a new trial.

The majority correctly states that an appellant must present his or her theory to the circuit court at the earliest opportunity in order to preserve it for appeal, and that Tilley's earliest opportunity was in his response to MNB and Moore's motion to strike his demand for a jury trial. However, the majority errs in finding that Tilley presented his constitutional argument regarding waivers in this response. Tilley did argue that the Arkansas Constitution protects his right to a jury trial on his legal claims and that no clean-up doctrine could deprive him of that right. However, under his argument section entitled "Waiver," Tilley cited the Arkansas Constitution but proceeded to argue that for a pre-litigation waiver to exist, the waiver must be knowingly, intelligently, and voluntarily made. Clearly, Tilley's response to MNB and Moore's motion to strike assumed the constitutionality of a pre-litigation waiver. Tilley did not argue that pre-litigation waivers are unenforceable under the Arkansas Constitution, and he implicitly conceded that pre-litigation waivers are enforceable as long as they are knowingly, intelligently, and voluntarily made. In short, Tilley argued the Arkansas Constitution protects his right to a jury trial, but he did not argue that the Arkansas Constitution prohibits the pre-litigation waiver of that right. Tilley first argued that pre-litigation waivers are unconstitutional after the trial ended.

As we held in *Lee v. Daniel, supra*, even a constitutional argument must be made before the entry of final judgment, and we noted there that the reason for the rule is to discourage lawyers "who might otherwise take a chance on a favorable result, and subsequently raise a constitutional claim if the gamble did not pay off." *Id.* at 476–77, 91 S.W.3d 464. We should apply the same rule here.

Although Tilley did argue that the waiver was not knowingly, intelligently, and voluntarily executed, he presents himself

as a sophisticated business person who expected to reap substantial profits from development projects he was planning. Additionally, Tilley was well aware of his potential claims against MNB and Moore because the alleged misconduct by MNB and Moore had already occurred. In fact, Tilley had already threatened litigation before he signed the loan agreement. Tilley therefore knew, before he signed the agreement containing the waiver, that he was waiving the right to a jury trial on the claims he later filed. Further, although Tilley argues that he signed the agreement after a "heated meeting," and he did not have a "whole lot of choices left," his vague statements are insufficient evidence of any alleged involuntariness.

Finally, Tilley failed to develop his argument before the circuit court that the waiver, even if valid, could not apply to his claims against Moore. When an argument is not fully developed at the trial level or on appeal, it is not preserved for review. *Omni Holding & Dev. Corp. v. 3D.S.A., Inc.*, 356 Ark. 440, 156 S.W.3d 228 (2004).

Tilley's constitutional argument was not preserved for appellate review, and the jury waiver was otherwise enforceable; therefore, the circuit court properly decided all claims without a jury, and Tilley's other arguments are moot. Accordingly, I must dissent.

Rhonda K. Wood, Justice, dissenting.

The plain language of the Arkansas constitution places authority in both the General Assembly and this court to determine how a party may waive his or her right to a jury trial. I would affirm the circuit court because predispute contractual jury-trial waivers are constitutionally permissible if entered into knowingly and voluntarily.

Article 2, section 7 of the Arkansas Constitution provides that "a jury trial may be waived by the parties in all cases *in the manner prescribed by law.*" Ark. Const. art. 2, § 7 (emphasis added). The majority oversimplifies the issue before us by explaining that two cases have addressed the issue, *Mode* and *Venable. Mode v. Barnett*, 235 Ark. 641, 361 S.W.2d 525 (1962); *Venable v. Becker*, 287 Ark. 236, 697 S.W.2d 903 (1985). In *Mode* this court held it was constitutional for the General Assembly to limit the right to a jury trial. Similarly, in *Venable*, we held that this court, through the Arkansas Rules of Civil Procedure, could limit the right to a jury trial. The majority proceeds to determine whether there is a statute or rule of procedure providing for prelitigation jury waivers and concludes there is not. Their misstep is based on the assumption that, because *Mode* and *Venable* identify two ways in which this court has upheld limitations on one's constitutional right to a jury, this court is excluded from upholding other limits.

While the majority's analysis may appear to be straightforward, it glosses over the appellant's argument that "prescribed by law" "obviously" refers only to statutory law. The appellant is wrong. The critical first step, which the majority does not take, in analyzing the appellant's argument is to look at the plain meaning of the word "law." The plain definition of "law" includes not only statutes and rules, but also common law. *Black's Law Dictionary* 1015 (10th ed. 2014) (defining "law" as "the aggregate of legislation, judicial precedents, and accepted legal principles"). This leads to the conclusion that "prescribed by law" is broader than the majority's implication that it is solely "prescribed by statute or rule."

Additionally, article 2's construction supports this, particularly given the interpretative presumption that "different words have different meanings." Scalia and Garner explain, "A word or phrase is pre-

sumed to bear the same meaning throughout a text; material variation in terms suggests a variation in meaning." Antonin Scalia & Bryan A. Garner, *Reading the Law: The Interpretation of Legal Texts* 170 (2012). The drafters of article 2 materially differentiated who could prescribe limits on constitutional rights by alternating the phrases "by the General Assembly" and "by law". For example, section 8 of article 2 provides limits on criminal charges "as the General Assembly shall make cognizable." Ark. Const. art. 2, § 8. Similarly, section 11 discusses how habeas corpus privileges may be suspended only "by the General Assembly." Ark. Const. art. 2, § 11. As in article 2, section 7, article 2 section 10 includes the phrase "prescribed by law" in addressing the rights of defendants. Ark. Const. art. 2, § 10. The writers' use of "prescribed by law" in some instances and "by the General Assembly" in others strongly suggests that "prescribed by law" is broader than statutory law. The variation in terms throughout article 2 cannot be considered superfluous. *See Parsons v. Associated Banc–Corp.*, 374 Wis. 2d 513, 531, 893 N.W.2d 212 (2017) (holding that a prelitigation jury waiver was constitutional because the phrase "prescribed by law" in the Wisconsin Constitution includes judicial precedent).

Finally, once established that article 2, section 7's use of "law" includes common law, the next step, which the majority also does not take, is to determine whether our common law supports the appellees' argument that prelitigation contractual jury-trial waivers are permissible as long as they are entered into knowingly and voluntarily. This adheres to decades of common-law jurisprudence, which provides that parties generally are free to contract upon any terms not contrary to statute or public policy. *Pest Mgmt., Inc. v. Langer*, 369 Ark. 52, 250 S.W.3d 550 (2007); *Ferguson*

*v. United Commercial Travelers of Am.*, 307 Ark. 452, 821 S.W.2d 30 (1991). In Arkansas, it is a core principle of contract law that we allow parties to enter into contracts that control the manner in which their future and potential disputes will be resolved, including the forum and governing law. *SD Leasing, Inc. v. Al Spain and Assocs., Inc.*, 277 Ark. 178, 640 S.W.2d 451 (1982) (enforcing lease agreement containing clause in which the parties expressly agreed to be subject to the jurisdiction of the State of Arkansas). This likewise should apply to prelitigation contractual jury-trial waivers.

Consequently, I would conclude that article 2, section 7 of the Arkansas Constitution does not limit permissible prelitigation jury-trial waivers to those set forth by statute or rule. Applying our common-law contract principles, prelitigation contractual jury-trial waivers are permissible if entered into knowingly and voluntarily. Therefore, I would hold that the circuit court did not clearly err in determining that Tilley's waiver of a jury trial was knowingly and voluntarily made. Accordingly, I dissent.

Womack, J., joins.