Karen R. Baker, Justice, dissenting. I must dissent from the majority’s decision to hold that the legislative waiver of sovereign immunity found in the Arkansas Minimum Wage Act is unconstitutional. The majority’s opinion is patently flawed for several reasons. First, the majority’s holding yields the untenable position that while private employers are required to pay their employees minimum wage, the State may forgo paying its employees the required minimum wage. By way of example, when an act is passed by the legislature or more specifically, when the citizens of Arkansas pass an act to increase the minimum wage, pursuant to the act, private employers are required to compensate their employees in compliance with the act. However, as a result of the majority’s holding, the Minimum Wage Act is no longer applicable to the State. Thus, if the State pays its employees below the required minimum wage threshold, State employees will have no available recourse because there is no longer a right to enforce the Act against the State. Second, the majority opinion appears to attempt to limit its holding to only legislative waivers of sovereign immunity; however, its holding is much more far-reaching. Article 5, section 20 states that “[t]he State of Arkansas shall never be made defendant in any of her courts.” Ark. Const, art. 5, § 20. (emphasis added). The word “made” is the past participle | 14of the word “make.” MerriarrWWebster’s Collegiate Dictionary (9th ed.) (1991). Webster’s lists twenty-five definitions for the word “make.” One of these definitions is to “to cause to be or cause to become.” Another definition is “to cause to act in a certain way: compel.” I submit that the drafters of the constitution intended for -“made” to mean the latter, to “compel.” Any other interpretation of “made” would render any waiver of sovereign immunity — by the executive, legislative or judicial branch — impossible. Thus, we could not hold that the State waives sovereign immunity: by the executive branch, through the attorney general seeking relief or by bringing suit; by a legislative act; or by the judicial branch through postconviction rules. However, if the word “made” means to compel, then the State can allow itself to be sued in those situations. Further, the majority’s attempt to limit its holding to money judgments is disingenuous to the literal text of article 5, section 20. If the majority is holding that “made” means to “cause to become,” then the text of article 5, section 20 should be read-to mean that the State cannot be caused to be a defendant in any of her courts. Absent from our constitution is any language limiting sovereign immunity to money judgments. The majority’s holding that the legislature may no longer waive sovereign immunity, necessarily means that the executive and judicial branches likewise may not waive sovereign immunity because any other interpretation would result in treating the legislature differently from the executive and judicial branches. For each branch to operate as envisioned by the constitution, one branch must not be subordinated to either or both of the other branches, and one branch must not take control of one or both of the other branches. City of Lowell v. M & N Mobile Home Park, Inc., 323 Ark. 332, 916 S.W.2d 95 (1996). |ifiThird, the majority declines to address Andrews’s arguments regarding article 2 because the circuit court failed to specifically rule on this issue. However, the Arkansas Constitution must be considered as whole, and' every provision must be read in light of other provisions relating to the same subject matter. Gatzke v. Weiss, 375 Ark. 207, 289 S.W.3d 455 (2008) (citing Foster v. Jefferson Cty. Quorum Ct., 321 Ark. 105, 901 S.W.2d 809 (1995)). Because of the majority’s holding, specific sections of article 2 now conflict with article 5. Section 1 governs the authority of the government and states that “[a]ll political power is inherent in the people and government is instituted for their protection, security and benefit; and they have the right to alter, reform or abolish the same, in such manner as they may think proper.” Ark. Const, art. 2, § 1. Section 7 governs the right to a trial by jury and states that “[t]he right of trial by jury shall remain inviolate, and shall extend to all cases at law, without regard to the amount in controversy; but a jury trial may be waived by the parties in all cases in the manner prescribed by law[.]” Id. § 7. See Tilley v. Malvern Nat’l Bank, 2017 Ark. 343, 532 S.W.3d 570. Section 13 states that “[ejvery person is entitled to a certain remedy in the laws for all injuries or wrongs he may receive in his person, property or character; he ought to obtain justice freely, and without purchase; completely, and without denial; promptly and without delay; con-formably to the laws.” Id. § 13. Section 29 states that “[tjhis enumeration of rights shall not be construed to deny or disparage others retained by the people; and to guard against any encroachments on the rights herein retained, or any transgression of any of the higher powers herein delegated, we declare that everything in this article is excepted out of the general powers of the government; and shall forever remain inviolate; and that all laws contrary thereto, or to the other provisions herein 11f,contained, shall be void.” Id. § 29. However, because of the manner in which the majority has interpreted article 5, the holding clearly violates the above-cited article 2 provisions. Fourth, after citing the 1874 constitution, the majority states, “Subsequently, in 1935, this court considered the issue of whether the legislature could waive the State’s sovereign immunity. See Ark. Hwy. Comm’n v. Nelson Bros., 191 Ark. 629, 87 S.W.2d 394 (1935). This court stated, ‘It is our settled conviction that the state cannot give its consent to the maintenance of an action against it.’” The majority implies that this was the first posL-1874 case in which it considered the issue of sovereign immunity. However, when presented with this issue in 1932, this court allowed the suits to proceed since two justices believed the suits were not against the State and two believed the State could consent to be sued. See L. Scott Stafford, Separation of Powers and Arkansas Administrative Agencies: Distinguishing Judicial and Legislative Power, U. Ark. Little Rock L. Rev. 279 (1984). In Arkansas Highway Commission v. Dodge, the court explained: It will be seen that out of the conflicting views of a majority of the several members of the court a very definite result has been reached; ie., that in a proper case the highway commission may be sued when authority for the bringing of the suit may be found in the statute ... we now hold that, in all cases where the statute authorizes a'suit, it may be maintained against the highway commission whether it be thought to be . a juristic person or whether section 20, art. 5, be merely declaratory of the general doctrine that the state may not be sued in her courts unless she has consented thereto. 186 Ark. 640, 646, 55 S.W.2d 71, 73 (1932), overruled in part by Ark. Hwy. Comm’n v. Nelson Bros., 191 Ark. 629, 87 S.W.2d 394 (1935), Thus, subsequent to the adoption of our current constitution, the doctrine of sovereign immunity has been interpreted at least three different ways. 117Fifth, the majority states that “under the doctrine of stare decisis, we cannot ignore six decades of this court’s precedent prior to Staton.” However, the same can be said with regard to our over twenty-years of precedent set forth in Staton and Tedder. In Chamberlin v. State Farm Mutual Auto Insurance Company, 343 Ark. 392, 36 S.W.3d 281 (2001), this court described the dictates of stare decisis as follows: Under the doctrine of stare decisis, we are bound to follow prior case law. The policy of stare decisis is designed to lend predictability and stability to the law. It is well-settled that “[precedent governs until it gives a result so patently wrong, so manifestly unjust, that a break becomes unavoidable.” Our test is whether adherence to the rule would result in “great injury or injustice.” (Internal citations omitted.) Pursuant to Chamberlain, the majority has failed to demonstrate that our precedent set forth in Staton is “patently wrong” or “manifestly unjust.” Instead, the majority’s decision, in a perfunctory fashion, overhauls over twenty years of our well-established law on sovereign immunity and has effectively revived the antiquated doctrine that “the king can do no wrong.”[2] By focusing solely on Staton and Tedder, the majority’s 11Ropinion ignores the breadth of its decision and leaves the state of law on sovereign immunity in complete disarray. The implications of its holding are astounding and call into question other established precedent. See Lake View Sch. Dist. No. 25 of Phillips Cty. v. Huckabee, 340 Ark. 481, 10 S.W.3d 892 (2000) (holding that the State, through the executive branch, waived sovereign immunity when it signed off on two published notices to the class members advocating attorneys’ fees); Ark. Dep’t of Human Servs. v. R.P., 333 Ark. 516, 970 S.W.2d 225 (1998) (holding that the General Assembly waived the Department’s sovereign immunity as to providing family services in child-welfare proceedings). The following list includes, but is not limited to, the specific types of actions that the majority’s decision' calls into question when the suit is filed against the State of Arkansas: • Arkansas Minimum Wage Act- • Arkansas Whistle Blower’s Act • Post-conviction cases • Land-condemnation cases • Illegal-exaction cases • Suits against State owned hospitals • Freedom of Information Act • Suits filed against DHS, including dependency-neglect cases As discussed above, the majority’s opinion transforms the State to king-like status and makes “the king can do no wrong” theory absolute. However, even under that theory, the |19law has always recognized the sovereign’s right to submit to suit. This court, for over twenty years, has recognized that the sovereign' may waive its immunity and submit to suit. I would .follow our precedent and I would hold that the General Assembly’s abrogation of sovereign immunity found in Arkansas Code Annotated section 11-4-218 is- constitutional. . Hart, J., joins. . Since Staton and Tedder, we have consistently recognized an exception to. the doctrine of sovereign immunity where an act of the legislature has created a specific waiver of immunity. See Ark. State Med. Bd. v. Byers, 2017 Ark. 213, 521 S.W.3d 459; Lenard v. Kelley, 2017 Ark. 186, 519 S.W.3d 682; Ark. State Police Ret. Sys. v. Sligh, 2017 Ark. 109, 516 S.W.3d 241; Kelley v. Johnson, 2016 Ark. 268, 496 S.W.3d 346; Johnson v. Butler, 2016 Ark. 253, 494 S.W.3d 412; Duit Constr. Co., Inc. v. Ark. State Claims Comm’n, 2015 Ark. 462, 476 S.W.3d 791; Ark. Dep't of Human Servs. v. Fort Smith Sch. Dist., 2015 Ark. 81, 455 S.W.3d 294; Smith v. Daniel, 2014 Ark. 519, 452 S.W.3d 575; Ark. State Claims Comm’n v. Duit Constr. Co., Inc., 2014 Ark. 432, 445 S.W.3d 496; Crossno v. Felts, 2014 Ark. 262, 2014 WL 2463092 (per curiam); DuBois v. Hobbs, 2014 Ark. 259, 2014 WL 2464052 (per curiam); Mitchem v. Hobbs, 2014 Ark. 233, 2014 WL 2019278 (per curiam); Bd. of Trs. v. Burcham, 2014 Ark. 61, 2014 WL 585981; Kiesling-Daugherty v. State, 2013 Ark. 281, 2013 WL 3322335; Ark. Lottery Comm’n v. Alpha Mktg., 2013 Ark. 232, 428 S.W.3d 415; Ark. Dep’t of Cmty. Corr. v. City of Pine Bluff, 2013 Ark. 36, 425 S.W.3d 731; Ark Game & Fish Comm’n v. Eddings, 2011 Ark. 47, 378 S.W.3d 694; Ark Dep’t of Envtl. Quality v. Al-Madhoun, 374 Ark. 28, 285 S.W.3d 654 (2008); Jones v. Flowers, 373 Ark. 213, 283 S.W.3d 551 (2008); Weiss v. McLemore, 371 Ark. 538, 268 S.W.3d 897 (2007); Simons v. Marshall, 369 Ark. 447, 451, 255 S.W.3d 838, 841 (2007); Ark Dep’t of Human Servs. v. T.B., 347 Ark. 593, 67 S.W.3d 539 (2002); Short v. Westark Cmty. Coll., 347 Ark. 497, 65 S.W.3d 440 (2002); State v. Goss, 344 Ark. 523, 42 S.W.3d 440 (2001); Ark. Pub. Def. Comm’n v. Greene Cty. Cir. Ct., 343 Ark, 49, 32 S.W.3d 470 (2000); Milberg, Weiss, Bershad, Hynes & Lerach, LLP v. State, 342 Ark. 303, 28 S.W.3d 842 (2000); Ark. Pub. Def. Comm’n v. Burnett, 340 Ark. 233, 12 S.W.3d 191 (2000); Ark. Dep’t of Human Servs. v. R.P., 333 Ark. 516, 970 S.W.2d 225 (1998); Office of Child Support Enft. v. Mitchell, 330 Ark. 338, 954 S.W.2d 907 (1997); Cross v. Ark. Livestock & Poultry Comm’n, 328 Ark. 255, 943 S.W.2d 230 (1997).